## HOWARD, PRESTON & BARRETT *v.* W. H. SIMMONS.

1. AGRICULTURAL LIEN—VALIDITY OF, AS AGAINST EXECUTION OF PRIOR JUDGMENT.—A contract for an agricultural lien, under the act of February 18th, 1867, can only take effect, as against a prior judgment creditor, from and after the date of the *enrollment* of such contract, without regard to its date. All of the crop, or any part thereof which may have been matured and gathered prior to such enrollment will be subject to execution of the prior judgment, and this, although the supplies used in raising the entire crop may have been advanced by the mercantile house claiming a lien under such contract.

2. SAME—JURISDICTION OF IN EQUITY.—In such cases the settlement of the respective priorities is a proper subject of equity jurisdiction.

3. AGRICULTURAL LIEN—RULE OF CONSTRUCTION—AMENDMENTS.—The policy of the law is liberal toward agricultural liens, and parties claiming such, and failing properly to aver priority, will be allowed liberal terms of amendment.

Error to the chancery court of Rankin county.    WATTS, J.

For the appellants the following errors are assigned:

1st. The court below erred in sustaining the defendant's demurrer to the complainant's bill.

2d. The court below erred in its decree dismissing the bill.

The facts are fully stated in the opinion of the court.

*Harris & Withers*, for plaintiffs in error.

This was a contest for a crop of cotton,. between a party advancing money and supplies, and taking a contract stipulating for a lien, but in form a conveyance, which may be construed as a mortgage on the crop, and certain judgment creditors whose judgments are older in date than the registered contract. When the crop was gathered, and part ginned

and baled, part in the lint and part in the seed, judgment creditors caused executions to be levied on this cotton—judgments rendered September 5th, 1867; levy made October 30th, 1867. The contracts or mortgages were executed and registered September 25th, 1867. The plaintiffs in error, furnishing the supplies, filed their bill, claiming priority of lien, asking foreclosure, and an injunction against proceedings under the executions, which was granted. Defendant Simmons, judgment creditor, filed a demurrer which was sustained and the bill dismissed.

The first point to be determined is as to the character of registered contracts, tested by the statute and its legal operation. The object of the statute is two fold: 1st, to give to parties advancing supplies and money to enable planters to make crops, a lien on the crops, etc.; 2d, to authorize and legalize mortgages and deeds of trust on growing crops, and crops to be pitched and grown thereafter. The mortgage and deed of trust may be for any debt or liability, without regard to the object or character of the debt, or its origin. While the mortgage or lien for the advances are to be devoted, if the contract is a mortgage, etc., for purposes not in aid of the cultivation of crops, it must, to be effectual, be recorded under the old law; registry under the act of 1867 would not suffice; but where the contract, no matter what its form or stipulations, is for advances of money or supplies to make a crop, the statute gives a lien from date of *enrollment or registry.*

We look alone to the fact whether the contract is founded on advances of money or supplies to aid in making the crop; it is this feature, alone, which entitles it to registry, and makes it a lien. This lien springs from the advances, not from the contract, is limited by the advances and not by the terms of the contract. This appears by the third section as to future advances. The first section is very broad, "that all debts hereafter contracted for advances of money, purchases of supplies, etc., shall constitute a prior lien on the crops, animals and implements employed, etc., from the time

the same shall be enrolled." It is immaterial whether the advances were originally made with reference to the statute or not, the contract for the advances, whenever enrolled, became a lien, if made after the passage of the act.

The cotton levied on was the crop of the year 1867, as the bill states, and is admitted by the demurrer. The contract part of the bill speaks of the crops growing and to be grown. The court will take judicial notice of the seasons—that in the course of nature the cotton crop on the 25th of September is not matured. The demurrer admits it to be then growing. By the act of 1867, p. 571, crops, before they are matured and *gathered*, are exempt from levy and sale, and consequently no lein of a mere judgment could attach. Planters Bank v. Walker, 3 S. & M., 409.

The plain import of the bill and exhibits is, that the levy was made on cotton growing in the field at the date of the contract, and this the demurrer admits. It is not certain, but possible, that the court below decided the case on the ground that the contract did not create a lien. But this position is untenable ; and yet there seems no other justification for the dismissal of the bill. These contracts are favored by law, and deserve favor. The judgment creditor has done nothing to produce the crop. He lies in wait until the factor's money has created property, and then makes a raid upon it.

The bill is, in structure, defective. A foreclosure could not be decreed, because Patterson, the debtor, was a necessary party, and the bill does not make him such. There was no forfeiture until the 25th December, that time being allowed by the contract. The prayer for injunction was too broad, as was the injunction itself. It enjoined the judgment and execution, when it should have only stayed the sale of the specific property levied on. Under the prayer for general relief, the court ought to have modified the injunction, and given directions for the restoration of the cotton. When the demurrer was acted on, there was a forfeiture, and the court, by allowing an amended and supplemental bill, could have administered full relief. The statute, Revised Code, art. 69,

p. 547, makes it the duty of the court to allow amendments to prevent delay and injustice; and it is no longer a mere matter of discretion. On sustaining the demurrer, the order in practice is, to suggest the defect, and give leave to amend.

The prayer for injunction, though too broad, includes a prayer to stay the proceedings on the particular levy, and a modification was the plain duty of the court, and the order on the demurrer should have been: that the defendant have leave to amend the prayer of the bill, and to bring Patterson before the court. The special causes, 2 and 3, relate simply to the structure of the bill, to formal defects, which, if they exist (and they do not), called for an amendment, and not a dismissal of the bill. Under the first assignment, no technical or formal defects could be reached; and if the court dismissed the bill under that assignment, on the merits, that is to say, that there was no lien created, we have shown that such a decision was wrong.

The court is asked, in view of the fact that the dismissal of the bill has been used *as a conclusive bar* to a suit at law, which is now pending before the court on writ of error, to consider and decide every question raised by the demurrer, especially, whether the bill was so defective as not to admit of relief, by amendment of the prayer, and the introduction of proper parties.

*D. Shelton,* for defendant in error,

Contended that on the face of the bill, complainant showed no grounds for relief in equity, against Simmons' levy; and if this be so, it is good either upon general demurrer, or the causes of demurrer assigned, "that there is no equity on the face of the bill." 1 Dan. Ch. P. & C. Pr., 564–852. We have no statute changing this rule of chancery pleading and practice.

This demurrer was filed only by Simmons. It is urged that even if the demurrer was properly sustained as to Simmons, and the bill properly dismissed as to him, it should not have been dismissed as to Patterson, but should have been retained

as to him.    The answer is, that after it had been dismissed as to Simmons, there could have been, on this bill, no decree granting relief against Patterson.    The bill was filed before forfeiture of the mortgage, before Patterson's default, before complainant was entitled to foreclosure.

The bill prayed a perpetual injunction against Simmons, and "that the mortgage be foreclosed." These four words are the only prayer that can possibly be construed as asking relief against Patterson.

Again, suppose this court shall decide that the demurrer was properly sustained, and the bill properly dismissed as to Simmons, but ought to have been retained as to Patterson, it would avail nothing as to Patterson; the court would only reverse the dismissal as to Patterson, not the ruling on the demurrer, and in sending the case back, as to Patterson, it would not reinstate it as to Simmons, but affirm it as to him. Patterson is clearly *not within* the jurisdiction of this court, consequently it can make no valid order of effecting him or his interests.    But plaintiffs in error raised another technical objection, that the chancellor did not give his reasons in his decree for his payment on the demurrer.    A right judgment will not be reversed even for a *wrong* reason assigned, or that *none* was assigned.

Counsel urge that on sustaining the demurrer to the bill, the court ought to have given leave to amend.    There is no rule in chancery practice authorizing this, where on the face of the bill, complainant has no equity.    Besides, there was no application by plaintiffs in error to amend.

Did the bill show that the facts entitled the complainant to the relief sought?    To answer this, involves an enquiry into the effect of complainants mortgage under the act of 1867, p. 569.    It is urged that under the first five sections of the act, the advances of money, supplies, etc., *constituted* the lien, etc., the counsel is forced to admit that it constituted it *only* from the time of enrollment under the second section.    It matters little what constitutes the contract, or where it was enrolled, or what constituted the contract for

advancement, it is clear that lien did not attach until the enrollment on the 25th day of September, 1866. This the statute expressly declares.

The question is *the existence of the lien*, for the statute says that no such lien shall exist until the enrollment, that the contract for the advance of money and supplies shall *constitute* a lien from the time that the contract shall be enrolled. Admit that under the 7th section we could not levy on the cotton while under cultivation in the field, yet we deny that it thence follows we had no lien on the matured cotton in the field ungathered. The statute makes an enrolled judgment a lien on all the property of defendants, giving priority according to dates, against purchasers and *mortgagees*. Rev. Code, art. 261, p. 524. A *vested lien* and a *right to levy* are very different things. To take away the former would be unconstitutional, to regulate the latter but a regulation of process, and therefore not unconstitutional. Said section only postpones the right to levy until the crop is gathered, but then it attaches immediately.

Plaintiffs in error ask relief against our lien and levy. The bill must show all the facts necessary to entitle them to that relief. Our levy was made within one month after the enrollment of their mortgage. The cotton was gathered and five bales of it were baled. There is no allegation that a pound of the cotton levied on, was ungathered on the 25th of September, 1867.

The two parts of the act provide for entirely different securities. The 7th section for a mortgage, the first five for a lien created only by law. These five sections require a mere contract for advancement and its enrollment. The 7th requires a deed of mortgage to be recorded. One has to be enrolled in the circuit clerk's office, the other to be recorded in the probate office.

Upon such contracts there is a limitation of six months to enforce them, after the debt becomes due, and a special remedy is given by sequestration as a *right*, without any cause except non-payment, and without either *fiat* or bond.

The intent of the act is to create a rigid lien and an efficient remedy against the crops, and thereby a credit sufficient to raise the crops. It was never intended to be given for any debt contracted on credit, other than that created by the act. The lien must exist in accordance with the first five sections, but none such is alleged in the complainants' bill. It alleges advancements made before the mortgage was made, but when it speaks of a contract by which the cotton was pledged to complainants, it says that contract was made the 25th of September, 1867.

TARBELL, J.:

On the 7th day of Nov., 1867, Messrs. Howard, Preston & Barrett, merchants, doing business in New Orleans, Louisiana, filed their bill in the chancery court of Rankin county, of which the following is a synopsis:

October 21, 1867, an execution issued from the office of the clerk of the circuit court of Rankin county, upon a judgment rendered in said court, September, 1859, in favor of W. H. Simmons, against Jas. M. Patterson, for $195 18, which execution was placed in the hands of the sheriff of Rankin county, Oct. 30, 1867; and on the same day was levied on a quantity of cotton as the property of defendant, Patterson, execution and sheriff's return being filed as exhibits; that the cotton levied on is not liable to levy on said execution, but complainants have a prior lien thereon, under the law of Feb. 18, 1867, for the benefit of agriculture; that the cotton raised by Patterson in the year 1867, and was secured to complainants for advances of money and provisions made by them to Patterson, subsequent to Feb. 18, 1867, to enable him to purchase stock and other supplies and necessaries to carry on a farm and make a crop during said year, 1867.

The contract with Patterson giving complainants a prior lien was entered into and executed Sept. 25, 1867, a copy of which is filed as an exhibit, and was registered with the circuit clerk of Rankin county, on the day of its date.

The debt on which the judgment in favor of Simmons against Patterson, in 1859, was rendered, accrued prior to June

1, 1865, and a copy of the record of that judgment is filed as an exhibit. Simmons is not a resident of this state, and the execution is levied by direction of his attorneys, with prayer that Simmons and his attorneys, the sheriff of Rankin county, and Patterson be made defendants; and for writ of injunction, etc., against those parties, to restrain them, etc.; and, that on final hearing the injuction be made perpetual, and the said mortgage lien be foreclosed; or if mistaken in the relief sought, then for such other and further relief, etc.

Defendant Simmons appeared and *demurred* to the *bill*, stating the following causes of demurrer:

1. No equity on face of the bill.  2. No account of dealings between complainants and Patterson, showing said advances. 3. Evasive, in not showing date of verbal contract for advances, whether before or after Feb. 18, 1867.  4. The contract not reduced to writing until the crop had been cultivated, etc., and until after the judgment lien had attached.  5. The reduction of the contract to writing after maturity of crops, was a fraud on the judgment creditor, and a fraudulent attempt to overreach the judgment lien.

The demurrer was sustained and bill dismissed, from which decree complainants bring this writ of error. The following causes are assigned for error:

1. That the court below erred in sustaining the defendant's demurrer to the complainant's bill.

2. The court below erred in its decree dismissing the bill.

This case arising under the law approved Feb. 18, 1867, entitled "An act for the encouragment of agriculture," our attention will be first directed to an examination of the provisions of this law.

Section 1 provides, "That all debts hereafter contracted for advances of money, purchase of supplies, farming utensils, working stock, or other things necessary for the cultivation of a farm or plantation, shall constitute a prior lien upon the crop of cotton, corn or other produce, of such farm or plantation, which is not by law exempt from levy or sale, by virtue of execution, and also on the animals and implements em-

ployed or used in cultivating the same, which shall have been purchased with the money so advanced, or which shall have been furnished by such person, in favor of the person or persons so advancing or furnishing as aforesaid, from the time the contract or contracts therefor, or a synopsis of the same, shall be enrolled as hereinafter provided."

It will be observed that the essential features of this section are:

1st. That the debt shall be contracted subsequent to the passage of the law; 2d. That the debt shall be for advance of money, purchase of supplies, farming utensils, working stock or other things necessary for the cultivation of a farm or plantation; 3d. That a debt thus contracted for money, stock, etc., shall be a prior lien upon the crop of cotton, corn, etc., and also upon the animals and implements employed or used in cultivating the same, which shall have been purchased with the money so advanced, or which shall have been furnished by such person, etc.; 4th. This lien shall be in favor of the person or persons so advancing, or furnishing, etc.; 5th. From the time the contract therefor shall be enrolled, etc.

Section 3 provides, 1st. The mode of enrollment in the office of the clerk of the circuit court of the county in which the farm is situated; 2d. Such enrollment shall be equivalent to notice to all persons of the existence of such lien; 3d. " *Provided, however,* that a party agreeing to advance a specific sum during the year, may enroll his contract, which shall be equivalent to notice of his lien for the full amount so agreed to be advanced, but the lien shall be limited to the amount actually advanced, with the interest thereon."

Sections 4 and 5 prescribe proceedings to enforce such lien.

Section 6 enacts " that it shall not be lawful for any sheriff or other officer to levy on or sell by virtue of an execution, or other process, issuing from any court in this state, any crop of cotton, corn or other agricultural product, while the same is under cultivation, and before it is matured and gathered."

Section 7 declares " that it shall be lawful to convey by way of mortgage or deed of trust, any crop of cotton, corn or agricultural product, being produced or to be produced within fifteen months from the date of such mortgage; *Provided,* that nothing in this act shall interfere with any prior lien granted by the provisions of this act, for the supplies and means furnished to grow the crop." The provisions of section 7 are to be attained by—1st. A conveyance by mortgage or deed of trust; 2d. The consideration may be for an antecedent debt, or any other lawful consideration; 3d. The property mortgaged or conveyed is limited to " any crop of corn, cotton or agricultural product, being produced or to be produced within fifteen months from the date of such mortgage; and 4th. *"Provided,* that nothing in this act shall interfere with any prior lien granted by the provisions of this act for supplies and means furnished to grow the crop."

This act is recognized as one of a class which the courts will construe liberally to give effect to the purposes of its enactment. It is entitled, " An act for the encouragement of agriculture." The object specified is one worthy of every encouragement, under all circumstances, even in the most favored states. This law was passed at a time when our people were prostrated and impoverished, without means, and without credit. To supply these; to aid the people in undertaking the cultivation of their farms, for the support of their families; to enable them to contribute to the support of the government, and to increase the wealth of the state; these were among the worthy objects of this law, recognized by all courts as entitled to their favorable consideration.

We are not, however, called upon, nor do we deem it expedient to construe theoretical questions, or possible cases likely to grow out of this enactment. Each case presented to us must stand or fall upon its own merits. We cannot undertake to anticipate questions, nor by a construction of the provisions of this law to lay down rules for all cases in advance.

The case at bar may be here briefly restated. The bill alleges: That on the 30th day of Oct., 1867, an execution

founded upon a judgment rendered in the circuit court of Rankin county, on the 5th day of Sept., 1859, in favor of W. H. Simmons, against J. M. Patterson, was placed in the hands of the sheriff of Rankin county, and by him, on the same day, levied upon certain cotton as the property of Patterson; that the cotton thus levied on was not liable to said judgment and execution, but that the complainants in the bill had a prior lien thereon—it being a part of the cotton crop raised by said Patterson in Rankin county, during the year 1867, and was secured to the complainants for advances of money and provisions made by complainants to Patterson subsequent to the 18th day of Feb., of that year, to enable him to purchase stock and other supplies and necessaries to carry on a farm and make a crop on said plantation, in said Rankin county, during the year 1867; that the contract and agreement by which said crop of cotton was pledged to complainants, and a prior lien thereon secured to them, for said advancements and supplies, was duly entered into in writing, executed and acknowledged by the said Patterson on the 25th day of Sept., 1867, a copy of which is annexed to the bill; that said contract or agreement was duly filed and registered according to law, in the clerk's office of the circuit court of Rankin county, on the same 25th day of Sept., 1867; that the doings and actions of the plaintiff in execution, his attorneys and the sheriff, are contrary to law and equity, tending to the injury and oppression of complainants; and they pray that Simmons, his attorneys, the sheriff, and Patterson be made parties, etc. Also that an injunction be granted, perpetually enjoining proceedings on the execution, and that the "mortgage lien be foreclosed;" and there is also a prayer for general relief.

Referring to exhibit "B," we find the paper writing between complainants and Patterson (the basis of this suit), the main features of which are these, to-wit:

It begins thus: "This agreement made and entered into this 25th day of Sept., 1867," etc., "Witnesseth, that whereas, Howard, Preston & Barrett, since the 18th day of Feb., 1867,

have made advancements of money and provisions to the amount $3,000, to the said J. M. Patterson, which is now due and payable, to enable the said Patterson to purchase stock and other supplies and necessaries to carry on a farm and make a crop, in Rankin county, during the year 1867, and with which money Patterson purchased mules and a horse, and by which advancements he was able to purchase other supplies and necessaries, to cultivate said farm and to make a crop ; and the said Patterson being desirous to secure H. P. & B., against loss on account of such advancements, and to secure to them the full benefits of the provisions of the acts of the legislature of Mississippi, entitled " an act for the encouragement of agriculture," approved Feb. 18, 1867," etc., " doth hereby and by this agreement, grant, bargain and sell to them all the crop of cotton *now growing, or which may be grown on said place in* 1867, and also the mules, and horses." This contract and agreement to constitute a prior lien in favor of said H., P. & B., for the judgment of their said debt. If paid on or before Dec. 25, 1867, the contract to be void, etc.

Of the construction and interpretation of contracts, Bouvier says : " The intention of the parties, is the pole star of construction ; but their intention must be found expressed in the contract and be consistent with rules of law. The courts will not make a new contract for the parties, nor will words be forced from their real signification." Bouvier's L. Dic., Title, Contracts.

An inspection of this writing shows that it was not only the intent of the parties thereto, to bring it, but by its express language it is brought, within the terms of section 1 of this law. The debt is for advances, supplies, etc.; the writing declares the intention of the parties to be, to fix the arrangement under section 1 ; and we hold it to be a " contract" under section 1, and not a " mortgage " under section 7.

Kent says : " It is a principle of law, that if the form of the conveyance be an inadequate mode of giving effect to the intention, according to the letter of the instrument, it is to

be construed under the assumption of another character, so as to give it effect." Kent's Com., p. 493, and cases cited.

The bill is conceded to be defective in several particulars, but its allegations in connection with the contract of lien show *prima facie*, at least, a proper and meritorious case for the interposition of a court of chancery. There are all the elements of equity, and the complainants are without adequate remedy at law, to-wit: The debt for the advances and supplies; the contract and its enrollment; the levy by execution subsequent to the enrollment upon property upon which the bill alleges there is a prior lien in favor of complainants; that this property is not subject to such levy under the execution; that there is danger of being deprived of the benefit of such lien; and the prayer for relief.

Of the power of a court of chancery to protect this property and secure it to the rightful parties, there can be no doubt. The broad and ample powers of equity should not be invoked in vain, because of informalities, or defects susceptible of amendment. Our laws have clothed the courts with almost unrestricted powers in this respect, and these powers should be liberally employed to the end that the very right and justice of each case shall be attained. Section 6 of the law under review, enacts, " that it shall not be lawful for any sheriff or other officer to levy or sell by virtue of an execution or other process, issuing from any court in this state, any crop of cotton, corn or other agricultural product, while the same is under cultivation, and before it is matured and gathered." Important questions in connection with this section were discussed by counsel:

1. Whether a lien under a judgment and execution can exist, or attach while a levy would be unlawful.

2. Whether, if in the case at bar, there was cotton "matured and gathered" before the enrollment of the contract on September 25th, 1867, it would be subject to the execution on the judgment, or to the lien created by the contract.

These questions are not presented by the record. It does not appear that there was or was not cotton, "matured and

gathered" prior to the enrollment of the contract. If there was such cotton "matured and gathered," then will arise the question whether cotton "matured and gathered" prior to September 25th, 1867, is subject to the judgment and execution, or whether there were equities which would decree it to complainants, notwithstanding the judgment and execution. We are referred to 3 S. & M., 409; 7 Wallace, 218; 1 Paige Chy. R., 128–283; 1 Ib., 219; 6 Barb. Chy. R., 181; 11 ib. 494; 6 ib., 27.

In the case of Planters Bank v. Walker, 3 S. & M., 409, it was held that pending the prohibition of the levy and sale of property by execution, no' lien attached, though it was held in another case by Chief Justice Sharkey, that a lien might exist, in a given case, even though a levy and sale could not take place, as in the case of suspension of a judgment, etc.

No lien attached under the execution in the case at bar, except by statute, and then only upon cotton "matured and gathered."

As to the authorities cited, in which a court of chancery will enforce an "equitable lien" it need only be said that they do not apply to cases of this character. The lien of complainants is created by statute, and exists only by the same statute from the enrollment of the contract. There can be no "equitable lien" in this case except as against Patterson; this lien being the creation of express enactment, and not by those equitable rules, as in the cases to which we have been referred.

Whether there was cotton "matured and gathered" belonging to Patterson prior to September 25th, 1867, is a question of fact, and not one which courts can determine by the seasons of which judicial notice cannot be taken further than their general division. The precise period of the maturity of a crop on a particular plantation cannot be thus determined. The bill is defective in not stating the facts here referred to as they existed in this case.

Liens are created in various ways; by law, and by contract; they are legal, or equitable, etc.

In the case at bar, we have only to do with liens created by statute, that in favor of the complainants and the lien of the judgment and execution, owing their existence alike, to the enactments of the legislature. Both being the creation of the same authority, are of equal dignity, though much may be urged in favor of the object of the law of February 18th, 1867. But the same authority which created the lien for the encouragement of agriculture, declared as solemnly, that " all judgments and decrees " enrolled as required by law, " shall be a lien upon, and bind all the property of the defendant within the county where enrolled, from the rendition thereof, and shall have priority according to the order of such enrollment, " etc. Rev. Code, page 524, art. 261. If therefore, at any time prior to the enrollment of the contract of September 25th, there was cotton " matured and gathered," the property of Patterson, the lien of the judgment and execution of Simmons attached, and it could have been levied upon and sold by such execution. However strongly the claim of complainants' appeals to us in consideration of this cotton having been produced by their money, as for the same reason, however little claim the judgment creditor may have upon property thus produced, nevertheless, there is no other result to which we can arrive. If, in this instance, the plain rules of law operate with apparent, if not with actual injustice, it must be remembered that complainants might have protected themselves by an earlier registration of their contract.

Having been conducted to the conclusion that the judgment creditor is entitled to all the cotton " matured and gathered" before the registration of the agricultural contract, inasmuch as it does not appear when the cotton in controversy was gathered, we will give the complainants an opportunity to amend their bill, so as to show that the particular cotton involved was not gathered before the enrollment of the contract, or as the fact may be, in case a part of this cotton was gathered before, and a part subsequent to such enrollment, the complainants being entitled only to what was not gath-

ered on the 25th day of September, 1867, the day of registration of the contract.

The application of complainants to amend, must be made to the next term of the chancery court of Rankin county, and if such amendment is not made, the court below will dismiss the bill.

The decree dismissing complainants bill is reversed, and cause remanded for further proceedings, in accordance with the foregoing.