C. C. BAIN *v.* GEORGE W. BROOKS.

1. "AN ACT FOR THE ENCOURAGEMENT OF AGRICULTURE," APPROVED FEBRUARY 18, 1867 — WRITING NECESSARY TO CREATE LIEN.—By this act a writing is necessary to create the lien it provides for.

2. CONTRACT IN WRITING WHICH DOES NOT CREATE A LIEN.— A written acknowledgment of indebtedness for "cash and supplies" furnished the signer, without any thing more, though filed and enrolled, does not constitute a lien under the act referred to.

APPEAL from the chancery court of Rankin county. CABANISS, Chancellor.

*Cooper & Cole,* for appellant.

A careful examination of the statute, subjected to the usual legal tests and rules of construction, will disclose the fact, that to create a lien according to the first or second sections of the act, it is indispensable that there should be a contract between the parties by which the debt was incurred and the lien given to secure it. The language of the first section is, "That all debts hereafter contracted for advance of money, purchase of supplies, etc., necessary for the cultivation of a farm or plantation, shall constitute a prior lien upon the crop of cotton, corn and other produce of such farm or plantation which is not exempt," etc., from the time the contract or contracts therefor, or a synopsis of the same, shall be enrolled as hereinafter provided. Clearly there was no contract for advance of money or supplies be-

tween the parties in this case within the meaning of the first section.

The second section is as follows : "When any owner or lessee of any plantation or farm shall make any contract with laborers to cultivate such farm or plantation for a share or shares of the crop in lieu of wages, and such owner or lessee shall make advances of money, provisions or clothing in accordance with such contract, such owners or lessees shall have a lien on the share of such laborers for the payment of the same."

These two sections, taken in connection with the whole act, manifestly contemplate a previous contract, and without such contract there can be no lien.

The act of the legislature is entitled "An act for the encouragement of agriculture." It was enacted at a time when the people were greatly embarrassed pecuniarily, stripped of supplies, many of the laboring classes anxious to work, but having no means of their own to subsist on while making a crop, and the owners of the soil unable to furnish them without security, and the merchants and dealers, also, unable to supply either the landlord or tenant, the employer or employee, without assurances that they would be paid when the crops were matured and brought into market. The law then was prospective. It said to the merchant, if you will contract with A, to furnish him money and supplies, and give him credit on the faith of his crop to be made, you shall have a prior lien on that crop from the date of the enrollment of your contract over and above all judgments and other debts of A. And to the owner or lessee of a farm or plantation who would hire hands to cultivate it, it says to him, if you contract with a laborer for a share of the crop, and in pursuance of that contract make advances to him, he likewise may acknowledge his crop (to be made) subject to the payment of your advances, and you also shall have a priority of claim thereto from the date of the enrollment of your contract with him. Hence we insist that the demurrer to the bill should have been sustained and the

complainant left to his only remedy, which was an action at law upon the due-bill. The overruling of the demurrer is first assigned for error, and if this was error then the final decree will be set aside and the bill dismissed.

It is assigned for error in the second place that after the overruling of the demurrer and leave to answer, the defendant answered and made his answer a cross-bill, to which the complainant answered, and an issue of fact was made up and evidence taken, filed and incorporated in the record, all which was disregarded by the court in making the final decree.

If either of these errors exist, then the final decree is erroneous and should be set aside and the bill dismissed. But it may be claimed by the defendant in error, that if it was error to overrule the demurrer, that error is cured by the subsequent pleadings in the case. That although the original bill shows no lien under the act of 1867 which could be enforced by writ of sequestration, yet the answer of Brooks to the cross-bill of Bain sets up a contract in writing between them for the year 1868, by which a lien was given, and alleges that they entered into a verbal contract for the year 1869 substantially the same as that of 1868.

In the first place, error in overruling the demurrer cannot be cured by subsequent pleading, as no writ of error lies from such interlocutory decree. See Heckingbottom v. Shell & Brinkley, 3 Smedes & Marsh. 588; Pickle v. Holland, 24 Miss. 566; Greenlee v. McCoy, 30 ib. 588. The improper overruling of a demurrer to a pleading is error, for which a final judgment rendered against the demurrant upon the verdict of a jury will be reversed, unless the record show clearly and positively that the verdict and final judgment are correct. Miller v. Mayfield et al., 37 Miss. 688.

In the second place, if it be true, though it certainly is not, that the error could thus be cured, the matters and things stated in the answer to the cross-bill do not amount to a contract for supplies for the year 1869, within the provision of the act of 1867.

This writ of error is prosecuted by the sureties of Bain on his replevin bond, as, being directly affected by the final decree, they have a right to do. Flournoy v. Smith, 3 How. (Miss.) 62 ; Rev. Code, p. 555, art. 103. And whatever rights Bain would be entitled to in this court had he prosecuted an appeal or writ of error, these appellants are also entitled to. We conclude, therefore, that if this court shall decide that it was error in the chancery court to overrule the demurrer, then the final decree was erroneous, and this court, as in the case of Calhoun v. Burnett, 40 Miss. 599, will proceed to render such a decree as the court below should have rendered on the demurrer.

*W. P. Harris*, on same side.

The demurrer not reaching the exhibit to the bill, to wit, the due bill, the actual case is not presented by it, but the whole case stands out prominently in the pleadings and proof taken together.

The decree should be reversed for one reason, so obvious, that it is sufficient to suggest it. $350 of the sum included in the due bill was an account contracted with a third party and transferred to the complainant in consideration of a horse valued at $200, and $150 in cash. This account was not a lien in the hands of the assignor, nor could it become a lien in the hands of the assignee without a new contract creating a lien. It had not been enrolled ; the law of 1867, p. 569, does not embrace such a case. It is perhaps in the power of a party who has advanced money or supplies and acquired a lien by recording his contract, to transfer the contract and with it the lien, but if he has not acquired a lien, surely his assignee can acquire none except by a special agreement creating it. It is manifest that the due bill here exhibited is not such an agreement.

The whole case is wrong, however, and this court proceeding to render the proper decree in the cause will dismiss the bill and cross-bill. Here was a planting partnership, a planting on shares without a special argrement. No lien

would arise in such case unless we except the equitable lien of a partner on the partnership assets for debts due him by the firm; and as to a planting on shares, there should be for like reason some special contract creating a lien on the share of a partner or party to the planting contract.

The defendant, in his answer, sets up a planting on shares with no stipulation for a lien, and no enrollment. The plaintiff, called on to answer a cross-bill which seeks to establish a cross demand and which interrogates him only as to such cross demand, stepped out of his way to reply to the defense set up in the answer proper, and alleges that there was a verbal agreement for 1869, substantially the same as that of 1868, in which a lien was expressly reserved. Of this verbal agreement there was no proof whatever, and being affirmative matter, the party affirming must prove the facts affirmed. This leaves us with the naked due bill, which the circumstances show to have been a trap set to overreach him. The cotton had been gathered, baled and sent to the depot. It was there divided between the parties, each taking half. At that point Brooks induces the defendant to give the due bill, and he immediately records it and forthwith gets a writ of sequestration. The due bill is made on the 19th of January, 1870, recorded on the 20th, and on the 24th the writ of sequestration is sued out.

The crop was finished. The crop of 1869 had become merchandise. The transactions of that year were over. The partners had come to a settlement, leaving some small matter to depend on arbitration. Each had taken his allotted share of the product of the farming enterprise of 1869, and, under these conditions, it would be mischievous and absurd to hold that a due bill or note, merely expressing a consideration, which consisted in an unenrolled account for money and supplies, executed the last of January of the succeeding year, created a lien under the agricultural lien law. The law would not raise a lien on the due bill taken by itself, and there is no proof that it was intended as a lien. Brooks attempted a sharp practice. He first has the cotton

divided, and, having got his share, he beguiles Bain into a final settlement, having him to sign a due bill, inserting the consideration, and falsely introducing an account assigned to him by a third party; and, having got his due bill, he hastens to enroll it, and to get out a writ to seize his partner's cotton on its way to market. This is a perversion of the agricultural lien law. That law does not apply to such a case. After a crop has been completed, and has been converted into bales for commerce, if there has been no lien created on it before it has been thus converted, any contract about it must take the same footing as a contract about any other merchandise. No one would be expected to look at the record of 1870 for an agricultural lien on the crop of 1869, and I am sure the court will hold that, without something more clearly indicative of an intention to give a lien than a mere due bill, executed long after the crop had been gathered, put up for market and divided, there was no such lien as is contended for. There manifestly could be no lien for $350 of the due bill, and, without an express contract creating a lien, none as to any part of the due bill. There being no lien, the remedy, both as to the original bill and the cross-bill, is at law. The bill is not filed for a settlement of a partnership, and cannot be converted into such bill, because there was a final settlement. There is a wide difference between this case and that of Howard & Preston v. Simmons, 43 Miss. There the court gave effect to a mortgage on a standing and growing crop. There was a recital that the supply man advanced on the faith of the lien, and that the planter desired to give him the benefit of that law. The crop was incomplete, and there was an expressed intent to create the lien.

*Shelton & Shelton,* for appellee.

1. This act does not require that the contract shall be in writing, much less does it require that the contract shall be written out before the advances are made. This court has decided in Howard et al. v. Simmons, 43 Miss. 89, that the

lien exists from the date of the enrollment, although the contract was not reduced to writing until some months after the advances were made. All that the law requires is, that whether the contract be written or verbal, a synopsis or contraction, or compressed view, or a memorandum of the contract shall be enrolled, as required by the act, and when so enrolled the lien attaches, not only for future but previous advances.

2. We next propose to consider the written evidence of indebtedness upon which the proceedings in the court below were founded, and which is filed as exhibits as to the said bill, and is in the following words :

"Due George W. Brooks $908 25 for cash and supplies furnished me in 1869, this the 19th day of January, 1870."
        (Signed)                        C. C. Bain.

"Filed, stamped and enrolled this 20th day of January, 1870."        (Signed)        James T. Ferguson, Clerk.

Now, is this instrument sufficient to constitute a lien, as contemplated by the statute? We think that it is. It shows that there was a contract between Bain and Brooks ; it shows that Brooks furnished money and supplies to Bain in 1869 ; it shows the amount that Bain was indebted to Brooks for such advances ; it is, in point of fact, a reduction to writing and consummation of the contract itself ; it also shows the enrollment, according to the statute. This, as we have heretofore shown, is all that is required by the statute. The act under consideration says that the lien should exist from the time the "contract, or a synopsis of the same, should be enrolled," and it is a matter of no importance whether the synopsis or memorandum so enrolled expressly states that it is to operate as a lien or not, because the act sets forth certain conditions or terms, upon the performance of which a party is entitled to a lien, and when these conditions are performed, and the synopsis enrolled in accordance therewith, the statute itself creates the lien, without reference to the language of the contract

or synopsis so enrolled.   It is only necessary for the contract, or the synopsis of the contract, to show that the requirements of the act have been complied with, and we have shown that the instrument under consideration does this, therefore we insist that it is such a contract, or synopsis of a contract, as is contemplated by the act above mentioned.  2 Parsons on Cont., p. 499, says, "The situation of the parties at the time and of the property which is the subject-matter of the contract, and the intention and purpose of the parties in working the contract, will often be of great service in guiding the construction, because this intention will be carried into effect so far as the rules of language and the rules of law will permit.   So the moral rule above referred to may be applicable, because a party will be held to that meaning which he knew the other party supposed the words to bear, if this can be done without making a new contract for the parties."   This author again says:  "In all cases the court will endeavor to give to the contract a rational and just construction ; and the presumption (of a greater or less strength according to the language used, or the circumstances of the case) is in favor of the comprehensive over the restricted, the general over the particular, the common over the unusual, sense."   Ib. p. 501.

TARBELL, J. :

This case arises under the law for the encouragement of agriculture, approved February 18, 1867, and comes to us from the chancery court of Rankin county.   The question is between the parties to the contract, the rights of third persons being no way involved.   It appears that, in 1868, Brooks and Bain entered into a written agreement for the cultivation of a crop on the land of Brooks, and such terms were stipulated that the crop was to be equally divided between the parties, and it was further agreed that "the said Bain acknowledges a lien on all of his half of said crops in favor of the said Brooks for supplies, clothing, and all other indebtedness to him, the said Brooks, which has already or

may be contracted during said year." By a verbal under-
standing, a crop was made in 1869 under the written con-
tract of 1868. In January, 1870, the parties so far effected
a settlement as to divide the cotton, and Bain executed to
Brooks a writing, of which the following is a copy :

"Due George W. Brooks nine hundred and twenty-eight
dollars and twenty-five cents for cash and supplies furnished
me in 1869, this, the 19th of January, 1870."

This instrument was filed or enrolled in the proper office,
January 20, 1870, and a writ of sequestration was issued
on the twenty-fourth of the same month. The bill is brief,
alleging advances and supplies to make the crop, the
division of the cotton, and the indebtedness, referring to the
due bill as evidence of the sum due, and of the lien. The
defendant demurred to the bill, stating the following causes :
1st. Want of equity ; 2d. No contract in writing, such as
would create a lien ; 3d. The contract sued on is merely a
promissory note, not reduced to writing until after the cot-
ton sequestered had been cultivated ; 4th. The attempt of
complainant is evasion, and his remedy is at law upon the
note ; 5th. In other respects, uncertain, informal and insuffi-
cient. The demurrer was overruled, and the defendant
answered, making his answer a cross-bill, setting out the
contract of 1868, and the verbal continuation of that con-
tract in 1869 ; avers that at the time of the execution of the
due bill mentioned, there were existing unsettled accounts
between the parties, which were to be adjusted by arbitra-
tion, and the amount found due respondent was to be
deducted from said due bill ; avers there was due respond-
ent on such unsettled accounts, to be credited upon said
due bill, the sum of $387 50 ; avers that included in the due
bill is the sum of $200 owed by respondent to one C. G.
Snead, and purchased of him by complainant with a view to
an unfair advantage over respondent. The answer to the cross-
bill asserts the due bill to have been given in completion of
a prior verbal contract, omitted to be reduced to writing by
accident only ; states an account as an offset to the claim of

respondent; makes the written agreement to arbitrate an exhibit; insists upon a decree for a sale of the cotton for the payment of the due bill; and that the court shall not adjudicate the matters referred to arbitration. The case was heard upon the pleadings, exhibits and proofs, and the final decree directed the sale of the cotton seized for the payment of the sum for which the due bill was given, and upon which this proceeding is based. From this decree an appeal was taken to this court, where a reversal is asked upon the following grounds: 1st. Because the demurrer to the bill was overruled; 2d. Because the evidence taken and filed upon the issue made up by the pleadings was disregarded by the court; 3d. The court erred in granting the final decree.

It will be seen that we are called upon to determine whether, by the act referred to, a contract in writing is required to create the lien authorized by that statute. Pamphlet acts, 1867, p. 569. The first section provides, "that all debts * * * for advance of money, purchase of supplies, farming utensils, working stock, or other things necessary for the cultivation of a farm or plantation, shall constitute a prior lien upon the crop of cotton, corn and other produce of such farm or plantation, * * * also on the animals and implements employed or used in cultivating the same, which shall have been purchased with the money so advanced, or which shall have been furnished by such person, in favor of the person or persons so advancing or furnishing * * * from the time the contract or contracts therefor, or a synopsis of the same, shall be enrolled." Section three enacts, "that all contracts within the provision of this act, or a copy thereof, shall be filed in the office of the clerk of the circuit court of the county in which the farm or plantation is situated, and such clerk shall enroll the same in the order in which they are so filed, * * * in the following form, etc.

A careful reading of this statute shows that its terms cannot be complied with except by a contract in writing. The

"contract," or a "copy thereof," cannot be "filed," and "enrolled" as ·prescribed, unless first reduced to writing. An analysis of this law leads to no other result. We have searched in vain for precedents under a similar enactment. There is in Georgia a statute, having the same object as the one under review, but that, in terms, requires the contract to be written. In Wyatt v. Turner, 37 Ga. 340, it was held, that "a note given for advances was a simple promissory note, and failed to show any intention to create a lien on the crop; it was a mere promise to pay so many dollars. This was not what the statute intended by the words, 'special contract in writing.' This special contract may be embraced in a promissory note, but there must be written evidence of the contract in order to create such a lien." This leads us to remark that the writing sued on, in the case at bar, is a promissory note, expressing the consideration, to wit, for "cash and supplies furnished" the maker in 1869, but it stipulates for no lien, and does not state the "contract." In 1868 these parties wisely reduced their contract for that year to writing, and it was prudently enrolled. In 1869 they agreed, verbally, upon the terms of the contract of the previous year, but accidentally omitted to reduce it to writing. In January, 1870, they settled, and Bain acknowledged an indebtedness to Brooks for "cash and supplies furnished" him in 1869 of $928 25; but this admission of the amount due complainant, and of the character of the consideration, does not admit that there was a lien, nor agree to create one. Bain owes Brooks a debt, which in equity and good conscience he ought to pay, but payment cannot be enforced in the mode undertaken in the absence of a written contract creating the lien. The remedy in this case was undoubtedly by the ordinary process of attachment. However reluctantly we declare a rule in a given case which involves financial loss, it is because relief is beyond our power without a disregard of those general rules which must govern and control all courts of justice. As agreeable as it would be to us to protect the complain-

ant in an honest and just claim, nevertheless, taking the view we do of the statute, the omission to reduce the contract of 1869 to writing was fatal, and is not cured by the verbal agreement, and the due bill on settlement.

The adjudications of questions arising under the statute of 1867 are quite limited. The first was that of Marye v. Dyche et al., 42 Miss. 347, involving only the relative rights of the landlord to his rents, and the claim of the mortagees under a mortgage and agricultural lien, wherein preference was given to the latter, the contract or mortgage having been duly enrolled prior to the attachment for rent. The second was Howard v. Simmons, 43 Miss. 88, the contest therein being between the merchants to whom the lien was given and a judgment creditor. The enrollment of the contract creating the lien was on the 25th September, 1867. The creditor claimed by virtue of a judgment long anterior to that time. It was held that, as to cotton matured and gathered prior to the enrollment of the contract for advances, the judgment lien was entitled to the preference. Thus, the question now under consideration is for the first time before the court of last resort. Of the opinion, that the statute of 1867 for the encouragement of agriculture requires the contract therein provided for to be in writing, it is unnecessary to discuss the remaining questions presented in the record. The result is, that the demurrer ought to have been sustained, whereupon the decree is reversed.

We do not see how the complainant can protect himself by this proceeding; nevertheless, to afford him an opportunity, subject to the views of the statute of 1867 herein expressed, we will remand this case.

*Ordered accordingly.*