NEWMAN CAYCE, Trustee, etc., v. JACOB R. STOVALL.

1. CHATTEL MORTGAGE — LIEN THEREOF — RULE AT COMMON LAW.— While the rule at common law was, that the chattel or thing mortgaged must be in existence at the time of the mortgage, yet there may be a pledge or hypothecation which will take effect in equity so soon as the chattel shall be acquired. The lien attaches to the thing when it comes *in esse* against the mortgagor and all persons asserting a claim thereto under him. A growing crop is subject to mortgage or sale under execution. A judgment subsequent in date is subordinate to an equitable mortgage.

2. JUDGMENTS — LIENS THEREOF ON AFTER-ACQUIRED PROPERTY. — The lien of a judgment attaches to after acquired property from the time it is acquired by the debtor, but does not relate back to the date of the judgment. The lien of all judgments in existence when the debtor obtains the property attaches alike. A judgment operates as a lien (if duly enrolled) from the date of its rendition upon all the property owned by the debtor at that time.

3. REPEAL OF STATUTES — AGRICULTURAL ACT OF FEB'Y, 1867. — Sec. 8 of the code of 1871, provides that " this code shall supersede and repeal all preexisting statutes of a general nature, the subjects of which are herein revised and consolidated. The act of Feb'y 17, 1873, for the encourage-

ment of agriculture, introduced for the first time into our jurisprudence liens as defined in the 1st, 2d and 3d sections, so as to give a credit to those who produce agricultural products. The 4th and 5th sections give remedy by a special mode of suit. The 6th section, to make efficient the lien, exempts the growing crops from sale under execution. The subject matter of this statute is not revised or consolidated and is not repealed by § 8 of the code of 1871.

ERROR to the Circuit Court of Itawamba county.   Hon. B. B. BOONE, Judge.

The facts of the case sufficiently appear in the opinion of the court.

The errors complained of are:

1. In permitting the execution read to the jury.

2. In giving the second charge asked for by defendant.

3. In overruling plaintiff's motion for a new trial.

*Finley & Cayce,* for plaintiff in error, contended:

1. That under the act of February 18, 1867, a growing crop is not subject to the lien of a judgment or execution, and that a sheriff or other officer is prohibited from selling under any process any crop while under cultivation, and before it is matured and gathered.   Acts of 1867, p. 571; Planters' Bank v. Walker, 3 S. & M., 409.

2. That this act of 1867—February 18, 1871—is not repealed by § 8 of the Code of 1871.   This section only repeals all preëxisting statutes of a general nature, the subjects of which are revised and consolidated in the Code of 1871, and the subject of this act is not revised or consolidated.   That the legislature has twice distinctly recognized this act as unrepealed and in force, by the act of April 5, 1872, and by the act of October, 1873, when it was repealed.

3. That if the statute of February 18, 1867, was not repealed until October, 1873, then the judgment of Stovall had no lien on the growing crops of Christian in July, 1873, the time when the deed in trust was executed and filed for record.   And the lien of the deed in trust beginning at the time it was filed for record, gave

it a priority of lien, which priority could never afterwards be divested except by an act of the parties controlling the deed in trust.

*Clayton & Clayton* and *J. A. Brown*, for defendant in error, contended :

1. That the lien of a judgment enrolled subsequent to the Code of 1871, attaches to a growing crop. This is the general law, and the statute of 18th February, 1867, forbidding it, was repealed by § 8·of the Revised Code of 1871. Planters' Bank v. Walker, 3 S. & M., 421; M. & O. R. R. Co. v. Weiner, 49 Miss., 739.

2. That the lien·of an enrolled judgment attaches to a crop, *eo instanti*, on its acquisition as property, relating back to the date of its enrollment, so as to cut out a trust deed, made by the debtor, subsequent to the enrollment of the judgment, and prior to the acquisition of the property. Moody v. Harper, 25 Miss., 494; Jenkins v. Gowen, 37 Miss., 446.

3. That under our statutes a mortgage of a cotton crop, not *in esse*, is valid, but the mortgage attaches to the cotton only when matured, relating back to the date of the execution of the mortgage, so as to cut out a judgment lien subsequent to that date ; but will not cut out judgments prior to its execution. 19 Wall., 547. But by the act of 1867, the agricultural lien is made a *prior lien* and will cut out an older judgment lien, as to all cotton matured, after the enrollment of the agricultural lien. The Cayce instrument is a deed in trust or mortgage. It does not pretend to be an agricultural lien.

SIMRALL, J., delivered the opinion of the court.

The questions of law arise upon an agreed case.

On the 26th of July, 1873, Arenton Christian executed a deed of trust to Cayce, trustee, to secure a note of $798.50, payable to M. C. Cummings, the first of November,. 1873. The deed embraced all the cotton raised by Christian in that year. The trusts and conditions were those usual in such instruments.

On the 7th of December, 1872, Jacob R. Stovall obtained a judgment, before a justice of the peace, against Christian for $60.00, which was enrolled in the office of the circuit clerk on the 26th of July, 1873. In November, an execution on Stovall's judgment was levied on two bales of cotton, of the crop of 1873, which were bought at the sale by Stovall. Cayce then brought suit in replevin for the cotton.

For the plaintiff in error it is contended that the deed in trust is a superior lien. For the judgment creditor it is argued that the statute of 1867, "for the encouragement of agriculture," has been repealed by the Code of 1871, and that the lien of the judgment relates back to its date.

Independent of the statute referred to, the deed of trust is a valid security at the common law. The crop was then growing, and according to all the authorities, was the subject of sale, either by contract or under execution. Planters' Bank v. Walker, 3 S. & M., 421. Evans v. Roberts, 2 Bos. & Pul., 378. It is also the subject of a mortgage, which is *sub modo* a sale. 2 Hill. on Mort., 2 vol., pp. 414, 416, §§ 12 and 18. In Sillers et ux v. Lester, 48 Miss. Rep., 523, *et sequiter*, the cases were extensively reviewed, and the doctrine deduced from many of them, with approbation, was that whilst at law, the property or thing mortgaged, must be *in esse* at the time, yet there may be a pledge or hypothecation, which will take effect in equity so soon as the chattel shall be acquired or produced. In Butt v. Ellitt, 19 Wallace, 547, it was said by the court, "the mortgage clause in the contract of lease of the 15th of January, 1867, * * could not operate as a mortgage, because the crops to which it relates were not then in existence. The lien attached when the crops grew." The lien attaches to the thing when it comes *in esse* against the mortgagor, and all persons asserting a claim thereto, under him, either voluntarily, with notice or in bankruptcy. Mitchell v. Winslow, 2 Story Rep., 644. A judgment, subsequent in date, is subordinate to an equitable mortgage. Finch v. Earl Winchelsia, 1 P. Wm., 282; De-

laire v. Keenan, 3 Dessauss. Rep., 74. In the matter of Howe, 1 Paige Ch. Rep., 129, 130.

Such was the effect of the mortgage of subsequently acquired chattels, as recognized in courts of equity. We do not wish to be understood as having committed ourselves to the broad doctrine that a mortgage of chattels thereafter to be acquired is unlimited, and in all circumstances to be sustained.

Where the mortgagor is engaged in the business of buying and selling chattels as a merchant, we do not think that a mortgage of the goods and merchandise, to be *thereafter* from time to time brought into the store, ought to be upheld against third parties who have acquired rights as creditors, although the mortgage might be good as to the merchandise on hand at the time.

But a mortgage of all the mules on a certain plantation, or *such as may be brought* upon it for the purposes of farm use would be admissible, as held in 28 Miss., 525–8.

The same principle would apply to machinery in a foundry or manufacturing establishment, introduced to supply necessities of addition and of renewal, from decay, etc.

So, too, of the earnings of a vessel, as freight, on a voyage, or the product of oil or fish, got in a whaling expedition. These instances are referred to for illustration, and not by way of enumeration.

What are the rights under the judgment lien? The judgment was enrolled on the 11th of April; the deed of trust was recorded the 26th of July thereafter. If the judgment lien took effect upon the crop growing, it is older and superior to that of the deed of trust; and the sale of the two bales of cotton under it vested the title in Storall. We have already remarked that a growing crop of cotton, or other annual products of cultivation, were subject to sale under execution. By an act passed in 1840, " it was made unlawful to sell by execution any crop of cotton or corn while the same was under cultivation, before matured and gathered." In construction of this statute, it was held, in Planters' Bank v.

Walker, 3 S. & M., 421, that there was no lien upon the growing crop; that it attached only when matured and gathered. We have not been able to find that this statute was brought forward and incorporated in the code of 1857, nor do we find it in the code of 1871.

The 6th section of the act of 1867, p. 571, "for the encouragement of agriculture," is almost in words the same as the act of 1840, and if that act was in force in 1873, when the transactions out of which this litigation arose occurred, then there was no judgment lien upon the cotton until it was matured and gathered. But it has been argued that the statute of 1867 has been repealed by the code of 1871. That code supersedes and repeals "statutes of a general nature which are herein revised and consolidated." § 8, page 8, Code 1871. The statute for the encouragement of agriculture, introduces, for the first time, into our jurisprudence, liens defined in the first, second and third sections, so as to give a credit to those who cultivate and produce agricultural products, to procure the means necessary to do so. The fourth and fifth sections give remedy by a special mode of suit. The sixth section, in order, as far as practicable, to make efficient the lien, and to give confidence and assurance to those advancing the means, exempts the growing crop from sale under execution.

The subject matter of this statute — the special agricultural lien — is not revised or consolidated in the code. Where the general subject is pretermitted altogether, it would be a narrow interpretation to hold that some part of the statute is repealed by implication, which connects itself with the main subject matter, and which is germain to and in aid of it. That is the character of the 6th and 7th sections. The entire scope of the statute is to enable parties to pledge the crop for the means to make it. That may be done by the special lien, as provided in the 1st, 2d and 3d sections. The 7th section is of broader import, and allows a mortgage or deed of trust (for supplies to make the crop, as well as for any other debt), being produced, or to be pro-

26

duced within fifteen months from the date of such security. The entire statute relates to the subject of liens on crops.

But the legislature did not suppose that this statute had been repealed by the code of 1871, which took effect in October of that year; for by the statute of April 5th, 1872, sec. 13, p. 135, it is expressly referred to and recognized to have been in force. Further recognition is made by the legislature in October, 1873, when it was expressly repealed, at the then extra session of the legislature.

Since the legislative department of the government has twice distinctly recognized the act of 1867 as unrepealed by the code of 1871, we should be well satisfied that that department of the government were in error, and the subject free from reasonable doubt, before we could declare the statute to have been repealed. We think the statute of 1867 remained in force until repealed in October, 1873.

By the 6th section of the act of 1867, Storall's judgment did not have a lien on the growing crop. The earliest time that such lien could attach was, after the repeal of the statute, October 22d, 1873. But the lien of the deed of trust attached to the cotton crop, at the time of its being filed for record, July 23d, 1873. This is so unless, as argued by counsel, the lien of the judgment related back to the date of its rendition. The language of the act of 1824, is, "in all cases the property of the defendant shall be bound and liable to any judgment that may be entered up, from the time of entering such judgment." In Moody v. Harper, 25 Miss., 493-4, it was held that the lien attached on after acquired property, from the time it was acquired by the debtor, and did not relate back to the date of the judgment. The lien on all judgments in existence when the debtor obtained the property attached alike. Art. 261 of the code of 1857, p. 524, regulating the lien of enrolled judgments, is literally reenacted in the code of 1871, § 830, except the final clause of the section of the former, in relation to judgments of justices of the peace. In the

case of Jenkins v. Gowen, 37 Miss., 446–7, the question carefully considered by the court was, as to the extent of the lien on after acquired property under the enrollment law ; and the court held that the enrollment law gave the same extent of lien precisely conferred by the statute of 1824; both statutes conferred the lien upon the property owned at the date of the judgment, the enrollment relating back to the date of judgment, if enrolled within thirty days. As to property acquired afterwards, the lien attached the moment of its acquisition. The judgment operates as a lien (if duly enrolled) from the date of its rendition, upon all the property owned by the debtor at that time. The lien attaching to after acquired property, dates from its acquisition and does not relate back to the time when the judgment was rendered. Applying this construction to Storall's judgment, no lien attached to the growing crop when his judgment was enrolled, but the lien did attach upon the cotton when matured and gathered, and not before. Howard v. Simmons, 43 Miss., 89.

Upon the principles of the authorities hereinbefore cited, we think that the lien of Cayce under the trust deed is superior to Storall's judgment.

Wherefore, the judgment is reversed, and cause remanded for a new trial.