## COOK v. JENNINGS.

1. ASSETS DESCENDED—PAYMENT BY HEIR—PRESUMPTION OF PAYMENT—PROOF BY CREDITOR.—In action for the settlement of a testator's estate, a creditor came in under call of the court and presented a sealed note of testator's wife, dated in 1868 and due in 1869, upon which the testator, who, as sole heir of his wife, had inherited an estate from her, endorsed a credit in 1888 of a payment made by him "as heir at law." *Held,* that testator's estate was liable for the payment of this note as a specialty debt; that the credit endorsed thereon by him prevented the presumption of payment, and that the presentation and proof of the claim was sufficient to entitle the creditor to a recovery.

2. FORECLOSURE—JUDGMENT FOR DEFICIENCY.—A decree in foreclosure fixed the amount due, directed a sale of the mortgaged land, and a report on deficiency, with leave to plaintiff to issue execution therefor; and from this decree there was no appeal. Afterwards the mortgagor died, and after his death the land was sold, leaving a deficiency unpaid on the mortgage debt, which was duly reported to the court. *Held,* that this deficiency was not a judgment debt as of the date of the decree, and did not rank as a judgment in the distribution of the deceased mortgagor's estate. MR. JUSTICE POPE *dissenting.*

3. HOMESTEAD NOT CLAIMED—DISTRIBUTION.—Where personal property of a deceased debtor is sold by the executor without any claim by his widow (who constituted his surviving family) for its exemption under the homestead laws, and such widow, a party to this action, still makes no such claim, the proceeds of such sale must be applied as the other assets of the estate, and are not primarily applicable to a debt which alone could have defeated a claim of exemption if it had been made.

4. ATTORNEY'S FEE NOT CLAIMED.—It is error in a Circuit Judge to provide for a fee to the attorney of an executor in action for the settlement and distribution of his testator's estate, when no such claim was made before him.

Before NORTON, J., Fairfield, September, 1892.

This was an action by the heirs at law and administrator *de bonis non* of Lawrence J. Cook, deceased, against Robert H. Jennings, executor of Nathan C. Robertson, deceased, commenced July 2, 1891.

*Messrs. Ragsdale & Ragsdale,* for appellants.

*Messrs. J. G. McCants* and *A. S. Douglass,* contra.

December 2, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. Such proceedings were had in the action of appellants against the respondents in the Court of Common Pleas, on its equity side, for Fairfield County, that his honor, Judge Norton, filed his final decree therein on the 2d January, 1893, wherein he directed the respondent, R. H. Jennings, as executor of the last will of Nathan C. Robertson, deceased, to distribute the balance of his testator's estate in his hands, to wit: the sum of $783.84, as follows: 1st. To the costs and expenses of administration, including a reasonable fee to his attorney, if he have one. 2d. To the plaintiffs' costs and expenses of this suit, not including counsel fee to his attorneys, nor including the proving of his claim before the referee. 3d. To the judgment now held by Mrs. Julia R. Robertson and her costs and expenses in this suit, including proof of her claim before the referee. 5th. *Pro rata* to the specialty debts of plaintiffs, of Geo. H. McMaster, and of the estate of Rion, and their respective costs of suit, including proof of their claims. 5th. To the account of W. E. Roche, and his costs of suit and proof of claims.

From this decree the plaintiffs below have appealed as follows: The plaintiffs except, &c.: 1. Because the said decree deprives the claim of the plaintiffs of its proper rank in the administration of the assets of the estate of Nathan C. Robertson, deceased. 2. Because his honor should have held that the claim of the plaintiffs was superior in rank, and preferred to all other claims proved in this action against the estate of Nathan C. Robertson, deceased, and was entitled to be first paid. 3. Because his honor should have held that, in so far as the funds in the hands of the executor represented an exemption which was liable only for the payment of the plaintiffs' claim, that the same should be applied exclusively thereto. 4. Because his honor erred in holding that the demand of Mrs. Julia Robertson was a judgment at the death of the testator, N. C. Robertson, and superior in rank to the claim of the plaintiffs. 5. Because his honor should have held that the claim of Mrs. Julia Robertson was not at the time of testator's death a judgment in contemplation of the act of the General Assembly providing for the order of

payment of the debts of decedent's estates. 6. Because his honor erred in holding that the claims of G. H. McMaster and the estate of Rion be paid *pro rata* with the claim of plaintiffs. 7. Because his honor erred in sustaining the claim presented by the estate of James H. Rion, deceased, against the estate of N. C. Robertson, deceased, the said claim not being a debt of the said N. C. Robertson, deceased, and no evidence having been submitted by the representative of the estate of Rion to show that the said N. C. Robertson was liable for said debt as heir at law. 8. Because his honor should have held that the said claim of the estate of Rion was presumed to have been paid from lapse of time. 9. Because his honor erred in holding and directing that the executor of the estate of N. C. Robertson, deceased, pay to his attorney a fee out of the assets in his hands before paying the claim of the plaintiffs.

As it will be seen, the contention here is between creditors of the estate of N. C. Robertson, deceased, and to correctly apprehend the *status* of the claims of each one of said creditors, we will reproduce so much of the report of the referee, Mr. Cathcart, as relates to these claims: 1. The claim presented by Mrs. Mary C. Rion, as executrix, &c., of James H. Rion, deceased. This is a sealed note executed to James H. Rion, dated 19th February, 1868, due on the 19th February, 1869, and signed by Martha P. Robertson. On the back of said note appears the following endorsement, to wit: "Paid on the within note one hundred dollars, 24th December, 1888. The above amount was paid by me as heir at law. (Signed) N. C. Robertson." On this note there was due on the 24th September, 1892, $430.36. 2. W. G. Roche, account against N. C. Robertson for $10.50. 3. G. H. McMaster, as the survivor of the firm of Ketchin & McMaster, sealed note as a claim against N. C. Robertson. Note dated July 5th, 1869, and signed by M. P. Robertson and N. C. Robertson. This note had sundry credits endorsed on it. Amount due on said note up to 24th September, 1892, $106.52. 4. Mrs. Julia R. Robertson's claim. Judgment against N. C. Robertson, she being now the holder of, and legal owner of, the judgment in the case of Henry L. Elliott, John P. Matthews, jr., and Joseph H. Cum-

mings, against N. C. Robertson. Amount due on said judgment for principal and interest up to 24th September, 1892, $505.06. 5. On bond of N. C. Robertson, as administrator of the estate of Lawrence J. Cook, deceased, $5,546.28. This bond bears date 3d November, 1857.[1] The small sum of $783.84, in the hands of the executor, represents the estate to be divided, and this sum arose from a sale of the personal property of testator by the executor.

It seems that the testator, N. C. Robertson, was twice married. His first wife, Martha P. Robertson, died after the 13th January, 1872, but the exact date is not furnished by the case. He then married Julia W. Robertson, who survives him, he having died on 13th April, 1890. By his first wife, Martha P. Robertson, at her death, as her sole heir, he inherited 800 acres of land, which was sold to pay her debt, under mortgage, and realized a sufficiency for that purpose, leaving over $1,000 to be applied to his debts, besides 100 acres sold by him for $325. These facts are important in connection with the claim of Mrs. Rion, as executrix. It must be borne in mind, however, that there is no evidence here that the amount now in court, is in any manner derived from the estate of the first wife, Mrs. Martha P. Robertson. Just here, it may be stated, that the evidence does not disclose any application for an exemption under the law, by Mrs. Julia W. Robertson, out of the personal property of her deceased husband. An examination of the grounds of appeal show to us that the appellants antagonize Mrs. Rion's right to appear as a claimant here at all, and that they insist that not only is the claim of Mrs. Julia W. Robertson no judgment, but also that, if that fact were admitted, the proceeds of the sale of personal property in the hands of the executor could not be applied to such judgment, because the appellants alone hold a claim that was anterior to 1868, when a homestead in lands and an exemption of personal property was provided for the head of a family in this State, and which, under the decisions of our courts, could defeat such exemption.

All that Mrs. Rion claims, that is allowed by the Circuit

---

1 This is plaintiff's claim.

Judge, is that the claim she presents be regarded as a sealed debt dated prior to April 16th, 1868, and for which N. C. Robertson is liable. There can be no question that her claim is under seal, and bears date the 28th February, 1868, but, then, it was not executed by N. C. Robertson, but by M. P. Robertson, his wife. To avoid this difficulty, she claims that N. C. Robertson, having become possessed of her entire estate at her death as her sole heir at law, and such estate being large in value as compared with the claim she is now presenting, must be held liable therefor as a sealed note of the date referred to, and she points to his recognition of this obligation during his lifetime by having paid $100 on her claim in April, 1888, as such heir at law. The appellants complain that the Circuit Judge failed to declare this sealed note paid by lapse of time. But a moment's reflection will show that this position is untenable, if an heir at law, by making a payment on a note made by one from whom he inherited, can arrest the statute; for this note was dated in February, 1868, and did not become due by its own tenor until twelve months thereafter, in February, 1869, and this payment of $100 by the heir at law was made in April, 1888, less than twenty years from the maturity of the note. So the question is resolved at last into the *status*, fixed by law, of the heir at law as to debts due by that one from whom he inherited.

The Circuit Judge referred this matter to sections 1952-3 of the General Statutes of this State. The appellant lays stress upon section 131 of our Code, as well as the case of *Sepaugh* v. *Smith*, 35 S. C., 613. The section of the Code referred to is as follows: "No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this title [time of commencing civil actions] unless the same be contained in some writing signed by the party to be charged thereby; *but payment of any part of principal or interest is equivalent to a promise in writing.*" No advantage can accrue to this appellant by citing this authority. The law fixed the liability upon Robertson, if he inherited the lands of Mrs. Martha P. Robertson, to pay her debts, if the inherited property was sufficient in amount to do so. In his

lifetime Robertson recognized his duty to pay this debt by paying $100 thereon, and when on the back of that sealed note he in writing acknowledged that he paid that $100 as heir at law of Martha P. Robertson, he fulfilled all the requirements of this section of the Code. Nor can any support be derived by the appellant from the case of *Sepaugh* v. *Smith, supra*. The case just cited was when an action was brought on a note upon which credits were endorsed, but such credits contained no statement by whom such payments were made. Without the credits, the note was barred by the statute of limitations. This court held that when credits were relied upon to prevent the bar of the statute of limitations, that such credits contained the new promises to pay what remains unpaid of the old debt, and should have been complained upon as plaintiff's cause of action, citing *Fleming* v. *Fleming*, 33 S. C., 510. In the appeal at bar, no such question arises. This creditor, Mrs. Rion, as executrix, after the pleadings were made up, under an order of reference, was merely required to present and establish her demand, and she relies upon this new promise in writing of N. C. Robertson, to pay what remained unpaid of the old note after the credit was allowed. Exceptions 7 and 8 must be overruled.

Exceptions 4 and 5 present a very interesting and serious question. It seems that Mrs. Julia W. Robertson is now the assignee of what purports to be a judgment amounting, on the 24th Septembert 1892, to $505.06. The history of this alleged judgment is, that in 1877, certain plaintiffs brought an action against N. C. Robertson on certain notes secured by mortgages of lands, and such proceedings were had in that action that by the report of a special referee it was determined that N. C. Robertson was due such plaintiffs, on the notes sued on, to the amount of $2,738.15. This report was ordered by Judge A. P. Aldrich, 28th October, 1878, filed and confirmed. "It was further ordered and adjudged, that the mortgaged premises described in the complaint, &c., be sold. * * * That if the proceeds of sale be insufficient to pay the amount so reported due * * * the said clerk [who was ordered to make the sale] specify the amount of such deficiency in his report of sale, and that the defendant pay the same; * * * and

14—40

that the said Henry L. Elliott and the said plaintiffs have execution thereof." Sale of the lands not having been made, on the 3d March, 1888, an order was passed by his honor, Judge Witherspoon, renewing said order for sale on the first Monday in November, 1888, or some convenient salesday thereafter. N. C. Robertson died the 3d of April, 1890. The mortgaged premises were sold the first Monday in January, 1891, by the clerk of court, who reported such sale to the court, specifying in said report that there was a deficiency of $450.81. This report was confirmed by the court.

It is thus manifest: 1. That the debt of plaintiffs in that action was ascertained on a day certain, for a certain amount due by N. C. Robertson, and that Robertson acquiesced therein. 2. That at the same time, the mortgages were adjudged to be foreclosed and a sale ordered to be made, with directions for an application of the proceeds of sale to the certain debt of plaintiffs, as fixed in the decree. 3. That this original order for sale was renewed in 1888. 4. That N. C. Robertson, the defendant in that action, died in 1890. 5. That the mortgaged premises were not sold in his lifetime, but were sold in January, 1891. 6. That a balance of $450.81 was found and reported due, after the death of Robertson, to the plaintiffs. The appellant now contends that as to this balance of $450.81, it is not entitled to rank as a judgment, and assails the decree of the Circuit Judge as erroneous when he adjudged to the contrary. As the appellant states this proposition: "When a simple decree of foreclosure is rendered against a debtor in his lifetime, but no sale is made thereunder and no deficiency ascertained to exist until after his death, does a claim against his estate for a deficiency reported after his death rank as a judgment, or does it take the rank of the instrument upon which such decree of foreclosure is rendered?" He cites in support of his position *Ex parte Farrars*, 13 S. C., 254; *Hull* v. *Young*, 29 *Id.*, 65; 5 Am. & Eng. Enc. Law, 240; Schoul. Ex'rs & Adm'rs, § 426; Wms. Ex'rs (5th Am. edit.), 905; Redf. Wills, 256; *Warren* v. *Raymond*, 12 S. C., 9; *Freer* v. *Tupper*, 21 *Id.*, 75; Jones Mort., § 1709.

We may as well just now announce our conclusion in this

matter, and afterwards compare the authorities with such conclusion by us, to see if there is not a confusion of ideas on this subject, which has arisen more as a question of practice than a substantial difference as to the principles of law by which this question should be settled. At any rate, in this State we desire that the law on this subject shall be declared. We recognize no difference in this State in judgments at law and decrees in equity. They are now the same, and are defined in section 266 of our Code: "A judgment is the final determination of the rights of the parties in the action." Wherever and whenever a court has made a final determination of the rights of the parties in the action, such is a judgment. The distinction between judgments and interlocutory judgments consists in the final determination of the rights of the parties in an action in the one case, and such determination of those rights of the parties in an action as are not complete or final, needing some other adjudication by the court, is an interlocutory judgment. It frequently happens in law and in equity that courts are called upon to pass orders to assist the performance of judgments on the law side and on the equity side of the court, and such orders are administrative and do not attain the dignity of judgments. It is necessary, in determining what is the judgment in any particular case, to look to the pleadings and the parties. When parties, under no disabilities under the law, in an action procure or submit to a judgment of a court, they are concluded by such judgment, and are so concluded in all cases by the terms of the judgment. When, therefore, parties complain upon an indebtedness as due by the defendant, or for which he is responsible, and at the same time a lien of any character upon property of such defendant exists in favor of such party who complains, and is set up in said complaint, and the court is asked to adjudge such property sold to pay such indebtedness, and a judgment of the court is passed in the action wherein is ascertained the exact amount due by the defendant to the plaintiff, and the property covered by the lien is ordered to be sold to satisfy such exact amount so ascertained to be due, with the right in the plaintiff, after a sale of the property covered by the lien has failed to pay that sum so ascertained to be due, to

issue an execution for the deficiency so adjudged to be due—such final determination of the rights of the parties to the action is a judgment, and should be so respected everywhere. We think the claim here set up answers all these requirements.

Let us examine some of the authorities relied upon, to see wherein they differ from our conclusions, if there be any such difference. First. The case of *Ex parte Farrars, supra*, 13 S. C., 254. Here, a bill in equity had been filed by Farrar Brothers against Louis Dial and others. A report thereon, made by the commissioner in equity, to which exceptions had been filed by both sides, came on to be heard by Chancellor Carroll, who, in his decree, sustained some of the exceptions and overruled the others, and ordered the commissioner to reform his report. An appeal from the decree of the chancellor was taken to the Supreme Court before the commissioner had acted upon the reformation of his report. This appeal was dismissed. Dial having died, his administratrix was substituted on Circuit in his stead as defendant, and a money decree taken against such administratrix. Meantime an action had been begun in the Court of Common Pleas, on its equity side, by a certain creditor of the estate of Louis Dial, deceased, against his administratrix, heirs at law, and others, creditors, to marshal his estate, sell land to pay debts, call in creditors, &c., and a final decree had, wherein the claim of Farrar Brothers was adjudged a simple contract debt. A petition in this last case was presented by Farrar Brothers, claiming that their claim as presented was without their authority, and, also, that they were entitled to rank in the distribution of Louis Dial's estate as *judgment* creditors. The Circuit Judge sustained the views of Farrar Brothers, but the Supreme Court, in a carefully prepared decision, showed conclusively that the claim of Farrar Brothers, under the decree of Chancellor Carroll made in 1868, was not a final judgment. It is true, in speaking of the character of that claim, the Supreme Court did recognize and enforce the doctrine laid down in *Haskell* v. *Raoul*, 1 McCord Ch., 32, that "a decretal order upon which an execution may be taken out is a final decree," but this test was expressly limited to *money decrees*, for the language used by the court just before a reference to *Has-*

*kell* v. *Raoul, supra,* was: "To give it such a character, it must be a final decree, and by that we understand (speaking of a money decree) such a decree as not only ascertains that a definite sum of money is due from one party to another, but orders the payment of the same."

Apply these principles to the case at bar, and we can see no matter of difficulty in reconciling the two. In *Ex parte Farrars, supra,* they were applying for a money decree and nothing else, while in the action wherein a judgment is attempted to be set up by Mrs. Julia W. Robertson, the plaintiffs in that action sought not only a money decree against the defendant therein, but also a foreclosure of a mortgage of land given by him to secure the payment of that very indebtedness for which a money decree was sought. To avoid a multiplicity of suits is the end of the Court of Equity. To hold that there may be a final judgment in the foreclosure of a mortgage, and then that a suit to enforce the payment of the indebtedness left unpaid is necessary, would certainly place the powers of a Court of Equity in a dwarfed condition. But it is suggested that such is not a legitimate conclusion, because here the Court of Equity by its judgment allowed the plaintiffs after a sale made of the mortgaged property to come in and obtain, in this very case, a final money decree for the balance remaining after the proceeds of sale of the mortgaged land had been applied to the indebtedness. This position involves the strange doctrine that there can be two final judgments in the same cause between the same parties, and it is obliged to be admitted by the parties opposing the views entertained by this court, that the right to the judgment in foreclosure and the right to a money decree for the balance, must arise from the allegations of the pleadings, and be within the scope of the relief to which the plaintiffs were entitled under their pleadings. For otherwise the court would violate the fundamental principles of section 297 of the Code: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case the court may grant him any relief consistent with the case made by the complaint and embraced within the issue." So, therefore, the pleadings to sustain the

*dual* judgments—one for foreclosure and one for balance remain-ing due—must raise such an issue. Where is there any incon-sistency in a judgment fixing the amount due, and directing property pledged sold and proceeds applied to the judgment, awarding *execution* only for the balance thereafter remaining? Are not administrative orders frequently provided for at the foot of final judgments? Wherein is there any inconsistency in regarding leave to *issue execution* as belonging to cases where administrative orders are by the final judgment permitted? We cannot see it.

We will next examine *Hull* v. *Young, supra,* 29 S. C., 65. In the case cited, the defendant, S. O. Young, had made a note for $300 to the assignors of plaintiffs, and secured its payment by a mortgage upon three several parcels of land, the Jay place, the Leard place, and the Findley place. All these par-cels of land were, subsequently, sold under judgments junior to the mortgage. One, the Leard place, was purchased by the plaintiffs, one by an attorney for certain creditors, and the Findley place by Mrs. Rachel Young. After such sales, ac-tion to foreclose plaintiff's mortgage on the Findley place alone was brought, and to this action S. O. Young and Mrs. Rachel Young were made parties, defendants. They set up the defence that the Findley place in the hands of Mrs. Young was only liable for its proportion of the mortgage debt. The decree on Circuit sustained this position, and fixed the sum of $80 as the proportion of the debt of $300, and interest thereon, for which the Findley place was liable; but the decree went further, and adjudged that both S. O. Young and Mrs. Rachel Young were liable to pay this sum to plaintiffs, if lands, when sold, failed to do so. The decree also adjudged that plain-tiffs have judgment against S. O. Young for the sum of $213.19, with interest and costs. Both S. O. Young and Mrs. Rachel Young appealed. This court held the Circuit decree erroneous as to Mrs. Young, because she was not liable to pay any debt to plaintiffs, although the land in her possession was liable to sale to pay the $80, fixed as its proportionate part of the debt of defendant, S. O. Young, to plaintiffs, and the Circuit decree was so modified. This court held, further, that the Circuit

Judge erred in giving judgment against S. O. Young for $213.19, with leave to issue execution therefor, before any sale of the mortgaged premises. This is the language of the opinion: "We think, therefore, that it was error to render judgment *to be enforced by execution* against S. O. Young for any specific sum of money, before the mortgaged premises were sold and the proceeds of such sale were found to be insufficient for the payment of the mortgage debt, when the plaintiffs would then be entitled to judgment for such deficiency, to be enforced against the mortgagor by execution. Of course, the plaintiffs, if so disposed, might have brought an ordinary action at law on the note, in which event they would have been entitled to recover judgment, and issue execution for the whole amount due upon the note. But they had a choice of remedies, the ordinary action on the note and a proceeding to foreclose the mortgage; and having adopted the latter, they must be required to pursue the course appropriate to such a proceeding."

Without going further, we might say, that there is a marked distinction to be observed in the case we are now reviewing and that presented by Mrs. Julia W. Robertson. In the former, the party who was entitled to speak, appealed from the Circuit decree, and had it reversed. In the latter, N. C. Robertson acquiesced in the decree on Circuit, allowing it to become a final decree. We are at a loss to see upon what ground these appellants can now, in effect, appeal from such Circuit decree, final against N. C. Robertson. It is true, if they could, they might impeach it for fraud, but they are powerless to affect it otherwise.

It may not be out of the way, however, to observe that we are not disposed to question the judgment of *Hull* v. *Young*, except in this respect, that a provision should have been added, that when a party plaintiff chooses to unite a legal and equitable cause of action in one suit, the court is not at liberty to disregard such a union, but must in its decree provide for both, so that harmony may be preserved, and that such a decree is, under our Code, if a final determation of the rights of the parties to the action, a judgment.

*Warren* v. *Raymond, supra,* 12 S. C., 9, we will next examine. In the case named, Chancellor Carroll had pronounced a decree in January, 1868, wherein he adjudged that Mary Raymond was due William M. Thomas the sum of $3,371.24, and directed a tract of land that had been mortgaged by Mary Raymond to William M. Thomas to secure this debt, sold and the proceeds applied to the payment of the same sum of money decreed to be due; but the decree provided for leave to issue execution only for the balance after application of sale of mortgaged premises. Nevertheless, Thomas had his decree enrolled, and issued execution for the whole debt adjudged due, without waiting for any sale. This course was attempted to be justified under the act of the General Assembly of 1840, relating to the necessity of the enrollment of decrees in order to make them liens as to third parties, in the light of the decision of *Blake* v. *Heyward,* Bail. Eq., 201. But this court held, in an opinion delivered by Chief Justice Willard, which was concurred in by Mr. Justice McIver, with a dissent from Mr. Justice Haskell, that the terms of the decree of Chancellor Carroll forbade Thomas from enrolling his decree until after a sale had been made, and as the judgment on Circuit was affirmed by both the State and United States Supreme Courts, he (Thomas) was bound by the terms of that decree. It will be readily seen that the question in that case was lien or no lien of the decree enrolled prematurely by Thomas in its effect upon third parties, and in no sense affected the question whether the decree was to be considered as a final determination of the rights of the parties as between Thomas and Mrs. Raymond, the parties to the original suit, and hence can be of no authority in deciding the issue joined in the case at bar. The case at bar is not a question of *lien* or *no lien;* under our acts for the distribution of intestate or testate estates, provision is made for payment of judgments without regard to the *lien* of such judgments.

*Freer* v. *Tupper, supra,* 21 S. C., 75, is the next case cited. This action was a contest wherein the validity of Freer's title to a small parcel of land was raised. It seems that Freer obtained a judgment against one Schultz on note and mortgage. After the mortgage was foreclosed and sale made thereof, and

proceeds applied to the amount ascertained to be due, there was a deficiency, and for this deficiency an execution was issued against Schultz. The active energy of this execution having expired, it was, after notice to Schultz, renewed, and under this renewed execution the land involved between Freer and Tupper was sold, and purchased by Freer. Tupper denied that the original judgment in Freer *vs.* Schultz was good : 1, because there could be no money decree or judgment therein ; 2, because the execution was without authority of law. These questions were decided in favor of Freer.

Mr. Justice McGowan, who delivered the opinion of the court, said, amongst other things : "The complaint in the case of Freer *vs.* Schultz is not in the case, and, therefore, we do not know its precise scope and purpose ; but in the absence of proof to the contrary, we must assume that the action was not for what is called a 'strict foreclosure'—for the sale of the land and no more; but that it was in the usual form, and prayed not only for the sale of the land, but also judgment for the deficiency of the debt, if there should be any. Taking this view and reading the decree of foreclosure carefully, it will be found that it adjudged three things : 1. That the sum of $994.75, besides the costs, were due by Schultz to Freer on the mortgage debt. 2. That the sheriff should sell the mortgaged premises at a future day, and pay the plaintiff the amount so reported due, viz : $994.75, or so much thereof as the purchase money of the mortgaged premises will pay of the same. 3. That if the proceeds of such sale be insufficient to pay the amount, &c., the sheriff specify the amount of such deficiency in his report of sale, and that the defendant, Frederick C. Schultz, be required by execution to pay the same. It seems to us that, taking the whole decree together, it did authorize an execution to issue for whatever might be the deficiency, if any. It is true, that the precise amount for which it should issue was not named in the decree, for the reason that at the time it was rendered it could not be foreseen what the land would realize, but it directed the sheriff to make the sale and apply the proceeds, and that the execution should issue for the deficiency, * * * but there was a decree for the whole mortgage debt (subject to be reduced

by the proceeds of sales), and we cannot say it was fatally defective in failing 'to authorize the issuing an execution for its enforcement.'" Thus it is manifest that the appellant can derive little comfort from this case. On the contrary, it is similar in the form of the judgment to that complained of in the case at bar.

Let us examine 5 Am. & Eng. Enc. Law, 240. The language used is: "A decree that does not authorize the issuing of an execution for its enforcement, is not entitled to rank as a final judgment in the administration of the estate." This language or view is perfectly consistent with the ideas we have advanced hitherto. Of course, a decree to be pronounced a money decree must include within it the right to enforce it by an execution, and so the very decree we have been considering does include the power. It is true, the execution is only to be issued for such balance as may be due when the money decree shall have credited upon it the land covered by the mortgage. In opposition to this view, it has been suggested that a second application to a court for its judgment is necessary, in order to know what balance may still remain after the mortgaged premises may be sold. We are unable to perceive any substantial difficulty here. A motion addressed to a court in furtherance of the enforcement of its judgment is often resorted to, and because the adjudication of such motion by a court becomes necessary, we do not call such determination a final judgment. No more so, this application to a court for the right to issue an execution for the balance. We must always remember that the main object of a Code of Procedure is to abolish the distinctions which had been allowed to impede the administration of our courts, and to produce an uniformity and simplicity in the application of remedies in courts of justice.

In this work we are now considering, reference is made, as its authority for the doctrine we have just quoted from it, to the case of *Ex parte Farrars, supra,* 13 S. C., 254, and also to Williams on Executors (5th Am. edit.), 905. The quotation from this latter work relied upon is: "If a decree in equity be not conclusive of the matters in question, *as if it be merely to account, and do not ascertain the sum to be paid* (italics ours), it is

analogous to a judgment *quoad computet* at law, and is no complete judgment until the judgment is paid." Now, these two quotations are all the authorities cited in the American and English Encyclopædia for its position. We have already pointed out the true meaning of the case of *Ex parte Farrars, supra,* but as to the quotation from Mr. Williams' work, it seems to us that, properly considered, it does not militate against the views we have expressed; for we have admitted that if a decree is not finally conclusive of the issues raised by and between par-- ties in the action, it is not entitled to the distinction of a final decree. Of course, therefore, a judgment ordering a further account to be taken is in no sense a final judgment, or if such decree does not ascertain the sum to be paid, it is not to be considered a final judgment. But, mark you, in the matter now discussed by us, there is no further account ordered, nor is there a failure to ascertain the sum due to the plaintiff by the defendant. The court has decreed what is due in dollars and cents by the defendant to the plaintiffs, and in its judgment has ordered how that sum is to be paid by the defendant.

But it is made my duty, as the organ of this court, to state that the majority of the court decline to assent to my views herein expressed on the *fourth* and *fifth* grounds of appeal herein; they adhere to the views recently expressed by them in the case of *Parr* v. *Lindler, ante,* 193, recently filed, to which case I could not agree. The exceptions four and five are sustained, but I dissent from this conclusion.

The sixth exception, that alleges error in the Circuit decree as to the rank of the claims of Geo. H. McMaster and the estate of Rion, is not tenable. We have already considered the claim of the estate of Rion, and determined that it was entitled to rank as a sealed note, and the claim presented by McMaster is, confessedly, of the same nature. So that, if we decide the questions raised in the first and second exceptions against the appellant, all difficulties as to the rank and order of payment of these claims *pro rata* with that of appellants is removed. It has frequently been held by this court, that the exemption of personal property to the head of a family in obedience to the mandates of the Constitution

creates no *estate* in said property in the head of the family. The law leaves the title as it found it. But the appellant lays stress upon the fact that he alone could avoid in law this exemption, and would have us adopt the view, that, therefore, he alone should have the right to appropriate the proceeds of sale, but we do not see that this follows. The sale of this personal property had been made by the executor of the will of N. C. Robertson, deceased, without any demand for such sale by the appellants. No process, mean or final, to procure such sale has ever been set in motion by them. We find the personal property as having been sold by the executor, and the proceeds of such sale held ready by him for distribution amongst such of the creditors of the estate of his testator as may be entitled to it. This court will not decide speculative questions; we must content ourselves with the *actual.* Therefore, as to whether we would have sanctioned an order to sell this personal property, is one question and does not arise here. The party who might have resisted such a sale is a party to this action, and no question of that character was presented or decided on the Circuit, where she was entitled to be heard. Certainly we will not consider it, if raised here for the first time. The laws of this commonwealth provide the order in which claims are to be paid out of the assets of a deceased debtor's estate, and there is no provision in such laws by which appellants' views can be carried into effect. These grounds of appeal are dismissed.

It remains for us to consider the ninth ground of appeal. No question as to the fee to be paid the executor's attorney was raised before the special referee. It seems to have occurred to the mind of the Circuit Judge as one that might arise, and hence he sought to provide for it. Attorneys are usually careful as to their own rights. We have heard of no such claim presented by any such attorney in this case. It is always safer to meet a question when properly presented to the court. Here, while we can easily see how, as a matter of prudence, the Circuit Judge felt called upon to so provide in his decree, yet we think he was in error here, and this exception is sustained.

It is the judgment of this court, that the judgment of the Circuit Court be modified as required, by our having sustained the fourth, fifth, and ninth exceptions, but in all other respects it is affirmed.    Let the cause be remanded to the Circuit Court, to enforce the views herein adopted by this court.