### WEATHERLY v. MEDLIN ET AL.

#### (139 S. E., 633)

1. MORTGAGE—PLEDGEE, WITH WHOM MORTGAGE WAS DEPOSITED AS SE-CURITY FOR LOAN, HELD ENTITLED TO PROCEEDS OF FORECLOSURE SALE TO EXTENT OF DEBT.—Pledgee, with whom mortgage was actually deposited by mortgagee's agent as security for loan, *held* entitled to proceeds of sale of mortgaged property by mortgagee to the extent of debt for which mortgage was pledged as collateral, on theory that actual deposit constituted a good equitable assignment, notwithstanding there was no assignment in writing.

2. EXECUTORS AND ADMINISTRATORS—MORTGAGEE AFTER MORTGAGOR'S DEATH, MAY APPLY PROCEEDS OF PROPERTY COVERED BY LIEN, BUT FOR DEFICIENCY SHARES WITH SIMPLE CONTRACT DEBTS (CIV. CODE, 1922, § 5409).—After death of mortgagor, mortgagee has right to have proceeds of particular property covered by lien applied to debt, but for deficiency takes place in equal rank with holders of bonds, debts by specialty, and debts by simple contract, as provided by Civ. Code, 1922, § 5409.

3. JUDGMENT—JUDGMENT ON DEATH OF DEBTOR IS PREFERRED TO SIMPLE CONTRACT DEBTS (CIV. CODE, 1922, § 5409).—Under Civ. Code, 1922, § 5409, a judgment after debtor's death is preferred to simple contract debts in distribution of cash received on converting personal property of estate.

4. JUDGMENT—"JUDGMENT" IS SOLEMN ADJUDICATION OF COURT AND GENERAL LIEN ON DEBTOR'S REAL ESTATE WHEN FOLLOWED BY EXECUTION LEVIED ON PERSONAL ESTATE.—A "judgment" is a solemn adjudication of the Court, a matter of record, open only to specific attack in proceeding in which it was rendered, and is a general lien on all of debtor's real estate when followed by an execution levied on his personal property.

5. MORTGAGES—"MORTGAGE" IS CONVENTIONAL INSTRUMENT; MORTGAGE LIEN EXPIRES WHEN MORTGAGED PROPERTY CEASES TO EXIST.—A "mortgage" is a conventional instrument between parties and is a specific lien only on property covered by it, and, when that property ceases to exist, lien is dead.

6. EXECUTORS AND ADMINISTRATORS—CONSTITUTIONAL PROVISION, AU-THORIZING ASSESSMENT BY MUNICIPALITY FOR PERMANENT IMPROVE-MENTS, DID NOT MAKE ASSESSMENT DEBT DUE PUBLIC ENTITLED TO PRIORITY OUT OF OWNER'S ASSETS IN ADMINISTRATOR'S HANDS (CIV. CODE, 1922, §§ 338, 4508, 4509; CONST. ART. 10, § 16 [29 ST. AT LARGE, P. 78]).—Const. Art. 10, § 16 (29 St. at Large, p. 78), authorizing municipality to levy assessment on abutting property for purpose of

paying for permanent improvements on streets and sidewalks, *held* not to create a personal liability against property owner for amount of assessment, so as to constitute such assessment a debt due the public entitled to priority, under Civ. Code, 1922, § 5409, out of assets in hands of administrator after owner's death; Section 338 being inapplicable, and Section 4508 not extending constitutional provision, even though construed as providing for personal liability.

Before DENNIS, J., Marlboro, February, 1926.   Modified and remanded.

Action by C. E. Weatherly, administrator of the estate of C. Rae Weatherly, deceased, against Mrs. S. G. Medlin and others.   From the decree, plaintiff appeals, and defendant Medlin appeals on a certain issue.

The finding of Judge Dennis relative to his conclusion that the pledgee of the mortgage was entitled to recover from mortgagee out of the proceeds of sale of the property to extent of the debt for which the mortgage was pledged as collateral was on the ground that there was an actual completed deposit by the husband of the mortgagee acting as her agent of such mortgage to secure a loan, and that it operated as a good equitable assignment thereof.

*Messrs. Tison & Miller,* for appellant, cite: *Whether paving assessment a debt or a charge on the land:* Ar. 10, Sec. 16, Const. 1895; Sec. 5406, code. *Preference given to taxes does not include an assessment for public improvement:* 24 C. J., 425. *No action at law will lie for recovery of taxes except where authorized by statute:* 36 Cyc., 1240; 37 Cyc., 1241. *South Carolina statute gives lien on property for payment of assessments:* Secs. 4506–4508, code. *When proceedings in equity may be taken for collection of taxes:* 37 Cyc., 1242. *Order of payment of debts by administrator:* 68 S. C., 528; 2 McCord, 188; 2 Rich. Eq., 247, 257; 1 Rich. Eq., 222; 6 S. C., 316; Hill, 257; 11 Rich., 476; 7 Rich. Eq., 281; 3 Strob. Eq., 164; 5 Rich. Eq., 473; Sec. 5409, code; 22 S. C., 139; 24 S. C., 559, 566; 18 S. E., 640; 47 S. E., 984; 36 S. E., 633; 3 Strob., 161; 9 Rich. Eq.,

500; McC. Eq., 466; 2 S. C., 483; 23 S. C., 114; Speers Eq., 215.

*Messrs. McColl & Stevenson,* for respondents, cite: *The administrators' act applies only to general assets:* 126 S. E., 133. *Order of payment of debts by administrator:* 1 McCord, 466; 24 C. J., 431, Sec. 1182. *Preferred judgments at common law:* 24 C. J., 433, Sec. 1188; 2 Blackstone, 511; Chitty (19th Ed.), 426; 8 A. & E., Enc. L. (2nd Ed.), 1034; Williams on Executors, 726. *South Carolina statute provides for judgments to be paid according to the rank there prescribed:* Sec. 5409, code. *Priority of judgments:* 3 DeS., 115; 1 Bail. Eq., 111; Rich. Eq. Cas., 387; 3 Strob., 133; 7 Rich. Eq., 281; 19 S. C., 498; 32 S. C., 482; 40 S. C., 204; 58 S. C., 123; 68 S. C., 528. *Cases distinguished:* 22 S. C., 139; 5 Peters, 518, 571. *Equitable assignments:* 20 S. C., 141; 11 Fed. (2nd.), 956; 97 S. E., 767.

*Mr. T. I. Rogers,* also for respondents.

September 17, 1927.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This action involves the marshaling of the assets of the estate of C. Rae Weatherly, deceased, of whose estate the plaintiff, C. E. Weatherly, has been appointed administrator. The intestate, C. Rae Weatherly, died insolvent on August 5, 1923. His estate consisted of a few mules, a growing crop, and a house and lot in the town of Bennettsville.

The defendant, American Agricultural Chemical Company, obtained a judgment against Weatherly in his lifetime for approximately $1,000, upon which nothing had been paid at the time of the death of Weatherly and nothing has been paid since. This judgment was a lien upon the house and lot, subject to a prior mortgage which Weatherly had executed to the defendant, Mrs. S. G. Medlin, and subject to Weatherly's claim of homestead.

It appears that at a time not stated in the record for appeal, but presumptively after the death of Weatherly in August, 1923, Mrs. Medlin instituted an action to foreclose the mortgage which had been given to her by Weatherly on December 21, 1921. She brought the action, as upon a lost instrument, and obtained a decree of foreclosure. The amount due upon the mortgage at the time of the sale under foreclosure was $5,668.10. The property was bid off at the sale by Mrs. Medlin at $4,600, leaving a deficiency in the mortgage debt of $1,079.10, as stated in the circuit decree ($5,668.10 less $4,600 = $1,068.10), with interest from October 6, 1924.

It appears that, after the mortgage of Weatherly to Mrs. Medlin had been executed, the house and lot became subject to the lien of a paving assessment levied by legal authority by the town of Bennettsville, and that certain installments thereof, payable through a series of years, had not matured at the time of the sale under foreclosure.

The administrator had converted into cash the personal property of the estate, which, as stated, consisted of certain mules and crops, and has that in hand. The contest primarily is between Mrs. Medlin, the mortgagee, and the American Agricultural Chemical Company, as to the application of these proceeds of the sale of the personal property in the hands of the administrator. (A subsidiary issue has arisen between Mrs. Medlin and the administrator of the estate of Jonas Thomas, which will later be explained.)

Mrs. Medlin contends: (1) That the proceeds are applicable to the deficiency judgment upon her mortgage (it does not specifically appear that such a judgment has been actually entered); (2) that the proceeds are applicable to the unmatured installments of the paving assessments, as "a debt due to the public," under Section 5409, Vol. 3, Code of 1922. The American Agricultural Chemical Company contends that the proceeds are applicable to its judgment, as a prior claim under Section 5409. The administrator is contesting the claims of both Mrs. Medlin and the American Company,

insisting that both rank as simple contract creditors, and that Mrs. Medlin, the purchaser of the house and lot at foreclosure sale, must personally take care of the future paving installments as they become due.

The case was referred to a special referee to take and report the testimony. During the progress of the reference the executrix of the will of Jonas Thomas put in a claim that the mortgage which had been executed by Weatherly to Mrs. Medlin had been pledged by her as collateral security to a loan of some $600, and claimed the proceeds of the foreclosure sale to the extent of that debt. Upon this, which has been referred to as the subsidiary issue, much testimony was taken.

Upon the coming in of special referee's report, the matter was heard by his Honor, Judge Dennis, who filed a decree dated February 27, 1926, in which he decided: (1) That the judgment of the American Company was entitled, in the distribution of the personal assets of the estate, to the priority over simple contract debts accorded by Section 5409 of Vol. 3, Code of 1922; (2) that the claim of Mrs. Medlin to such priority, for the deficiency upon her mortgage debt against Weatherly, should be denied; (3) that the future installments of the paving assessment should be paid by the administrator as "a debt due to the public," in preference to the judgment of the American Company; (4) that the executrix of the will of Jonas Thomas was entitled, as pledgee of the Weatherly mortgage, to the proceeds of the sale of the house and lot, to the extent of the debt for which it was pledged as collateral.

Both the administrator of Weatherly and Mrs. Medlin have appealed from this decree; the administrator contesting the first and third conclusions, and Mrs. Medlin the fourth. It will be observed that Mrs. Medlin does not contest the second conclusion.

In reference to the fourth conclusion of his Honor, Judge Dennis, we are entirely satisfied with his decree in this respect and his finding is affirmed for the reasons stated by him. The second conclusion, as stated, is not at issue, and need not be further considered.

There remain the two questions:

First. Is the American Company entitled, in the distribution of the personal assets of the estate in the hands of the administrator, to the priority of judgments over simple contract debts, accorded by Section 5409, Vol. 3, Code of 1922?

Second. Should the future installments of the paving assessment be paid by the administrator, as "a debt due to the public," under Section 5409, out of the personal assets of the estate in his hands, in preference to the judgment of the American Company?

As to the first question: The contention of the administrator is that this question should be answered in the negative, for the reason that the assets of the estate now in the hands of the administrator are the proceeds of the sale of personal property, upon which the judgment never acquired a lien; in other words, that a judgment, under the statute, is not entitled to priority of payment because of its rank, but only because of its lien.

Section 5409 specifies the order in which the debts of a decedent shall be paid out of the assets of the estate in the hands of the executor or administrator, as follows:

"1. Funeral and other expenses of the last sickness, charges of probate, or letters of administration;

"2. Debts due to the public;

"3. Judgments, mortgages, and executions—the oldest first;

"4. Rent;

"5. Bonds, debts by specialty, and debts by simple contract."

The statute provides, as to mortgages, that they shall not be entitled to priority over the debts mentioned in subdi-

visions 4 and 5, "except as to the particular· parts of the estate affected by the liens of such mortgages."

It further provides:

"No preference shall be given among the creditors in equal degree, where there is a deficiency of assets, except according to legal priorities."

This last-quoted clause manifestly means that, as to judgments, mortgages, and executions, the proceeds of the particular piece of property upon which any one of them may have acquired a prior lien, at the time of the death of the decedent, shall be applicable to the claim thus secured, and that, as to the deficiency, there shall be no preference as between them in the general assets. It constitutes obviously a modification of the third subdivision, which provides for the payment of these claims, "the oldest first."

The vital question, however, is whether as to judgments and mortgages upon which there may appear a deficiency after the application of them to the proceeds of the particular property covered by their respective liens, or where neither the judgment nor the mortgage is a lien upon any particular property, the priority accorded, apparently, by the statute, shall be recognized in the distribution of the general assets.

As to mortgages, there can be no discussion, for the amendment of 1878 to the original Act of 1789 specifically denies such right to the holder of a mortgage:

"Mortgages, however, not to be entitled to priority over rents and debts by specialty or by simple contract, except as to the particular parts of the estate affected by the liens of such mortgages."

The result is that the mortgagee has the right to have the proceeds of the particular property covered by his prior lien applied to his debt, and that for the deficiency he takes his place in equal rank with the holders of "bonds, debts by specialty and debts by simple contract." But as to judgments, the question, so far as our consultation of the state oracles has extended, is an open one.

It would appear that, if the contention of the appellant should be sustained that a judgment, under the statute, is not entitled to priority because of its rank, but only because of its lien, the act was entirely unnecessary; for regardless of the statute the judgment creditor would be entitled to his lien, which would give him the right to the proceeds of the sale of the property covered by his lien. Unless a judgment is to be preferred by reason of its rank, it is without preference at all under the statute; if it be a lien, its priority is due to that lien, and not to the statute; if it be not a lien, the statute is without effect at all.

In the very recently decided case of *Hurst v. Rhame*, 130 S. C., 367; 126 S. E., 133, the Court declared:

"The sole point in this appeal is whether the funeral expenses of an intestate have priority, under Section 5409, Code of 1922, over chattel mortgages, in the distribution of the proceeds of the sale of such chattels by an administrator. The question is definitely determined in the negative by the cases hereinafter cited, which hold that the order of payment of debts by an administrator, prescribed by said section, refer only to such assets, in the hands of the administrator, as remain after the satisfaction of the liens which existed at the death of the intestate"—citing a number of South Carolina cases.

In *Rutledge v. Hazlehurst*, 1 McCord, Eq., 466, the Court said:

"The act is merely directory to the executor as to the manner of disposing of the assets where there are no pre-existing liens, and this appears to me to be consonant with the English decisions as well as our own."

In the case of *Commissioners v. Greenwood*, 1 Desaus., 450, it was held that even debts due to the state had no priority over citizens who had judgments, mortgages, or other liens. It follows from this that, as to "such assets in the hands of the administrator as remain after the satisfaction of the liens which existed at the death

of the intestate" (which would apply also in the absence of liens), a judgment takes the preferred rank assigned to it in the statute.

It is interesting to note the difference between judgments and mortgages, in the matter of priorities, at common law:

"At common law  *  *  *  judgments rendered against decedent in his lifetime are preferred claims against the general assets of the estate. Some statutes preferring judgments contemplate that the judgments shall be subsisting liens at the debtor's death, or at least be capable of being liens; but in the absence of any such provision a judgment is entitled to preference, although it did not constitute a lien on the debtor's land at the time of his death or would not have constituted such a lien if the debtor had owned any land." 24 C. J., 431.

"Property which is subject to a lien or incumbrance can in a strict sense be considered assets of the estate only so far as its value exceeds the amount of the incumbrance, and hence it follows that the rules of priority applicable in the case of general assets of the estate must be subject to considerable modification when applied to incumbered property, although the excess after payment of the incumbrance will be applied according to the usual rules of priority." 24 C. J., 431.

On the other hand, the rule at common law, as to mortgages, was different. As is said in 24 C. J., 433:

"The common law rule  *  *  *  is that a mortgage is entitled to no preference out of the general assets merely by reason of the fact that it is a mortgage, but ranks as against the general assets according to the nature of the instrument which it was given to secure."

The distinction was probably due to the difference in the natures of the two securities. A judgment is the solemn adjudication of the Court, a matter of record, open only to a specific attack in the proceeding in which it was rendered; it is a general lien upon all of the debtor's

real estate, and, when followed by an execution, levied upon his personal property. It may lie dormant for years, with no property in existence upon which its lien may operate, but ataches the instant title to real estate becomes vested in the debtor. A mortgage is a conventional instrument between the parties. It is a specific lien only upon the property covered by it, and, when that property ceases to exist, the lien is dead. That was the rule as to mortgages in this state from the time of the decision of *Tunno v. Happoldt,* 2 Mc-Cord Eq., 188, in 1822, down to that of *Edwards v. Sanders,* 6 S. C., 316, in 1875, which overruled the *Tunno case* and that of *Kinard v. Young,* 2 Rich. Eq., 247, in 1846. Within a few years after the decision of *Edwards v. Sanders,* in 1878, the amendment to the Act of 1789 above referred to was enacted, restoring the rule in the overruled cases of *Tunno v. Happoldt* and *Kinard v. Young;* and in 1884, in the case of *Piester v. Piester,* 22 S. C., 139; 53 Am. Rep., 711, the Court shot another bolt into the already dead body of *Edwards v. Sanders,* distinctly overruling it.

It is significant that in the *Piester case* the Court declared, referring to the statute, now Section 5409: "Does this give a mortgage, apart from the property embraced, a rank with judgments?"—a statement not authoritative, as a judgment was not then involved, but subconsciously recognizing that the rule as to judgments was that contended for by the mortgagee in that case.

It is also significant that the General Assembly in enacting the amendment of 1878 did not include judgments along with mortgages, in declaring the rule that mortgages were limited to the specific property covered by their liens, and, as to the deficiency, ranked as against the general assets according to the nature of the instrument which it was given to secure.

It appears logical, therefore, that, unless the common-law rule as to judgments has been changed by statute, that rule should still obtain. The fact that a different rule obtains

as to mortgages carries little conviction that the same rule should be applied to judgments, in view of the essential difference at common law which has been noted between the two.

For the benefit of those who may wish to follow the tortuous path followed in the study of this question, a complete list of the South Carolina cases more or less in point, none directly deciding the question, follows: *Commissioners v. Greenwood,* 1 Desaus., 450. *Mason v. Man,* 3 Desaus., 116. *Woodrop v. Ward,* 3 Desaus., 203. *Tunno v. Happoldt,* 2 McCord Law, 188. *Rutledge v. Hazlehurst,* 1 McCord Eq., 466. *Hutchinson v. Bates,* 1 Bailey, 111. *State v. Harris,* 2 Bailey, 598. *McIntosh v. Wright,* Rich. Eq. Cas., 385. *Vernon v. Ehrich's Ex'rs,* 2 Hill Eq., 257. *McVoy v. Percival,* Dud., 337. *Napier v. Gidiere,* 1 Speers Eq., 215; 40 Am. Dec., 613. *Tennant v. Stoney,* 1 Rich. Eq., 222; 44 Am. Dec., 213. *Kinard v. Young,* 2 Rich. Eq., 247. *Morton v. Caldwell,* 3 Strob. Eq., 161. *Thomas v. McElwee,* 3 Strob. Law, 131. *Ex parte Ware,* 5 Rich. Eq., 473. *Tucker v. Condy,* 7 Rich. Eq., 281. *Wilson v. McConnell,* 9 Rich. Eq., 500. *Klinck v. Keckley,* 2 Hill Eq., 250. *Haynsworth v. Frierson,* 11 Rich., 476. *Kinsler v. Holmes,* 2 S. C., 483. *Edwards v. Sanders,* 6 S. C., 316. *Ex parte Farrars,* 13 S. C., 254. *Piester v. Piester,* 22 S. C., 139; 53 Am. Rep., 711. *Baxter v. Baxter,* 23 S. C., 114. *McLure v. Melton,* 24 S. C., 559; 58 Am. Rep., 272. *Hardin v. Clark,* 32 S. C., 480; 11 S. E., 304. *Cook v. Jennings,* 40 S. C., 204; 18 S. E., 640. *De Loach v. Sarratt,* 58 S. C., 117; 36 S. E., 532. *Ex parte Goldsmith,* 68 S. C., 528; 47 S. E., 984.

The cases of *Cook v. Jennings,* 40 S. C., 204; 18 S. E., 640. *De Loach v. Sarratt,* 58 S. C., 117; 36 S. E., 532, and *Ex parte Goldsmith,* 68 S. C., 528; 47 S. E., 984, are, however, quite near the point. In *Cook v. Jennings,* it was said:

"The case at bar is not a question of lien or no lien; under our acts for the distribution of the intestate or testate estates,

provision is made for payment of judgments without regard to the lien of such judgments."

In *De Loach v. Sarratt:*

"Section 2048 (5049) gives a preference to claims of that character over judgments, where such judgments have no liens upon the fund to be administered—and here it does not appear that these judgment creditors had ever acquired a lien upon the fund in question—and when the Court takes possession of the assets of an intestate, it should, as far as practicable, conform to the law prescribed for the administrator in the administration of such assets."

In *Ex parte Goldsmith:*

"* * * For, granted that the judgment cannot be enforced by execution, having lost its active energy, still 20 years have not elapsed since the rendition of the judgment, and under the laws of this state regulating the payment of claims against the estate of an intestate, such judgment would operate as a judgment against such estate."

We are of opinion, therefore, that the ruling of his Honor, Judge Dennis, that the American Company's judgment entitled it to priority in the assets in the administrator's hands, was right. (No question has been raised as to a homestead exemption in the fund in dispute.)

As to the second question: Should the future installments of the paving assessment be paid by the administrator, as "a debt due to the public," under Section 5409, out of the proceeds of the personal assets of the estate in his hands in preference to the judgment of the American Company?

The claim of Mrs. Medlin is that the paving assessment constituted a debt due by Weatherly to the town of Bennettsville; that it is "a debt due to the public," and is therefore entitled to prority of payment out of the assets of the estate in the hands of the administrator, under the provision of Section 5409.

If the premise be correct, the conclusion claimed is
6    inevitable. We do not, however, agree with the con-
tention.

The Constitution (Article 10, § 16 [29 St. at Large, p.
78]) provides:

"The General Assembly may authorize the cities of
* * * and towns of Bennettsville * * * to levy an
assessment upon abutting property for the purpose of pay-
ing for permanent improvements on streets and sidewalks
immediately abutting such property. * * *"

The question is, Does this provision of the Constitution
create a personal liability upon the property owner for the
amount of the assessment levied upon his property? It
certainly does not do so in terms. The general rule upon
the subject is thus expressed in 4 Dillon Mun. Corp. (5th
Ed), § 1453:

"But a remedy by personal judgment against the property
owner must be expressly conferred and will not be implied
from authority to impose a special assessment"—citing cases
from Indiana, Louisiana, Michigan, and Pennsylvania.

As to taxes generally, it is held in 37 Cyc., 1240:

"As a tax is not a debt in the ordinary meaning of the
word, it is generally held that no action will lie for its re-
covery; that is, that a suit at law cannot be maintained
against the taxpayer unless a statute authorizes such an
action."

Doubtless under Section 338, Vol. 3, Code 1922, which
constitutes taxes a debt of the person against whom they are
assessed, they would be considered personal liabilities, ca-
pable of sustaining action at law; but we find no such pro-
vision relating to paving assessments. The question is to
be determined by the provision above quoted of the Con-
stitution, and the statute (Section 4508) cannot be held to
extend the constitutional provision, even if it could be con-
strued as providing for a personal liability.

We conclude, therefore, that the decree, in so far as it directs the payment of the unmatured installments of the paving assessment of the administrator, cannot be sustained.

The judgment of this Court is that the decree of his Honor, Judge Dennis, be modified as herein indicated, and that the cause be remanded to the Circuit Court for further proceedings in conformity herewith.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE PURDY concur.