### BELKNAP & CO. v. GREENE BROS.

1. JUDGMENTS—LIEN OF.—The proceeds of after-acquired lands by judgment debtor must be paid ratably to all judgments in active energy at time of acquisition, notwithstanding date. *Wallace* v. *Graham,* 13 Rich., 322, *distinguished from this.*

2. LIEN OF JUDGMENTS distinguished from lien of judgments revived; from lien on crops; from lien of two mortgages; from voluntary deed in fraud of creditors; and from distribution of decedent's estates.

Before TOWNSEND, J., Spartanburg, February, 1899. Reversed.

Rule to show cause against sheriff in case of W. B. Belknap & Co. against A. W. and W. K. Greene, trading as Greene Bros. From order requiring sheriff to satisfy oldest judgment in full, he appeals.

*Mr. R. K. Carson,* for appellant, cites: Rev. Stat., 744; 2 Head, 558.

*Mr. Clough Wallace,* contra, cites: Rev. Stat., 744; Code, 309; 2 Strob., 309; 37 S. C., 214; 46 S. C., 116; 13 S. C., 284; 6 S. C., 12; 13 Rich., 322; 2 McM., 155; 2 Speer, 92; 9 Ore., 215.

September 30, 1899.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER.   The question in this case is under a rule to show cause why the sheriff should not be required to apply the proceeds of the sale of certain property of one of the judgment debtors, W. K. Greene, to the satisfaction of a judgment in favor of the plaintiffs herein.   The facts are undisputed and may be stated as follows: the plaintiffs recovered their judgment against the defendants, A. W. & W. K. Greene, and the same was entered upon the 19th of October, 1893.   Fleishman, Morris & Co. also recovered judgment against said defendants, and the same was entered up on the 29th of November, 1893.   The property sold by the sheriff was the interest of the said W. K. Greene in the estate of his deceased father, who died intestate in April, 1896, which interest was sold by the sheriff on the 3d of August, 1896, and the sole question is as to the proper application of the proceeds of such sale.   In other words, the question is, whether either of these judgments can be properly said to have a prior lien on the property of the judgment debtor, from which the proceeds of sale have been derived.   The statute (sec. 744 of the Rev. Stat. of 1893) provides that: "The sheriff shall pay over the proceeds of sale of any real estate sold by him to any judgment having prior lien thereon."   It will be observed that the language of the statute is—*not* that the sheriff shall pay the proceeds of sale to the *oldest* judgment—but to the judgment having *prior lien* thereon, implying that the right to priority of payment depended upon the priority of the lien and not upon the priority of the *date* of the judgment, for the lien of a judgment rests upon statutory provisions, and does not, necessarily, have a lien from

its date; and, in fact, for a time, such was the law of this State. See sec. 313 of the Code as originally adopted. So that the inquiry is whether either of these judgments had a prior lien on the property sold by the sheriff, and not which one of them is the oldest in date; for, as we have seen, the fact that the plaintiffs' was first entered, does not, necessarily, give it a prior lien. We do not see how it can be said that either of these judgments had a prior lien upon the property sold by the sheriff; for it is quite certain that neither of these judgments had any lien upon such property when they were entered, for the reason that, at that time, such property did not belong to the judgment debtor, and might never have been acquired by him. There would be as much reason for saying that these judgments, then, had a lien upon the property of any other third person, as for saying that they had a lien upon the property of the father of the judgment debtor, who was then alive. When, therefore, did these judgments become a lien upon the interest of the judgment debtor in his father's estate? Certainly not in 1893, when both of these judgments were entered, the father being then alive; and they could only have become a lien on this property in April, 1896, when the father died intestate, and the judgment debtor became entitled to an interest in his estate as one of the heirs at law. If so, then both of these judgments became a lien upon this property precisely at the same time, and neither one can be said to be a prior lien to the other. It is contended, however, that though neither of these judgments became a lien on this property until after it was acquired by the judgment debtor, yet as the plaintiff's judgment was the oldest in date, it, by reason of that circumstance, became entitled to priority, although both judgments became liens at the same time. · If, as we have seen, the lien of a judgment is derived solely from statutory provisions, a sufficient answer to this position is that there is no statutory authority for it; and we are unable to conceive by what authority a Court can undertake to say that, where there are two judgments, neither of which have any lien

upon given property at the time they were entered, and they subsequently acquire such lien at the same time, and under the same circumstances, either has priority of lien over the other.

So far as we are informed, we have no authority in this State upon the question which we are called upon to decide. The case of· *Wallace* v. *Graham*, 13 Rich., 322, cited by counsel for respondent, is not in point, for it does not appear in that case that the judgments there in question were recovered before the interest of the judgment debtor was acquired; and certainly the question presented in this case was not considered or even alluded to.

The authorities elsewhere, with practical unanimity, sustain the view which we have adopted. In 1 Black on Judgts., sec. 460, it is said : "If several judgments rendered and entered against the same defendant at different times, and he afterwards acquires the legal title to real estate, the liens of the several judgments attach together upon the property at the same instant, and all stand upon the same footing, and the oldest judgment has no priority. This general rule is accepted in all the States, so far as we have been able to discover, except Oregon;" and even that can scarcely be regarded as an exception, as we shall presently show, as the decision there turned upon the phraseology of the statute there. The cases cited by Black to sustain his text are *Relfe* v. *McComb*, 2 Head. Tenn., 558; 75 Am. Dec., 748; *Michael* v. *Boyd*, 1 Ind., 100; *Moody* v. *Harper*, 25 Miss., 484; *Cayce* v. *Stovall*, 50 Miss., 396, and *Davis* v. *Benton*, 2 Sneed (Tenn.), 665. An examination of these cases shows that the cases of Relfe *v.* McComb and Cayce *v.* Stovall are directly in point, and the other cases, though not precisely in point, recognize the principle upon·which the doctrine of the text rests. In the case of Moody *v.* Harper, which arose under the statute of 1824 of Mississippi, the Court based its decision upon the ground that a lien cannot exist until there is property to which it can attach, saying : "It is certainly true that a prior lien is entitled to a prior

satisfaction. But the lien itself must exist; it is but a charge upon property for a particular purpose, and when there is no property, of course, there can be no lien. Mere priority of judgment, under the act of 1824, gives no right to a prior satisfaction, unless it creates a lien." This was said, although the language of that act was: "That in all cases the property of the defendant shall be bound and liable to any judgment that may be entered up from the time of entering such judgment" (which is substantially the same as the language of sec. 309 of our Code, upon which counsel for respondent relies), for the Court said that the legislature in enacting this law had in view only the property which the judgment debtor owned at the time judgment was rendered. The Court also said that they could find no case which held that the lien of a judgment upon after-acquired real estate, related back to the date of entry of the judgment. The case of *Creighton* v. *Leeds,* 9 Oregon, 215, which is mentioned as an exception to the general rule, can scarcely be so regarded, for the language of the statute under which that case arose is as follows: "From the date of the docketing of a judgment, as in this title provided, or a transcript thereof, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, *or which may be afterwards acquired therein."* And the Court in rendering its decision laid stress upon the words which we have italicized. But as our statute contains no such words, that case is not in point.

A sufficient answer to the argument drawn from the language used in subdivision 2 of sec. 309 of our Code, is the fact that we are not now dealing with the effect of a judgment which has been revived, and if we were, respondent would be met with the express provision in that section, declaring that "such lien shall not revert back to the date of the original entry of such judgment." So, too, his illustration, drawn from the statute authorizing a lien for advances made on crops not yet planted, fails for the reason that the statute in reference to that subject

makes special provision that the person making such advances shall, upon complying with the provisions of the statute, have a first lien upon the crops, while in the case before the Court there is no such special statutory provision. So, also, the analogy drawn from the case where two mortgages are given, on different dates, upon a tract of land to which the mortgagor has not yet acquired a title, will not hold good. For even assuming, without deciding, for the purposes of this case, that the legal proposition upon which this argument is based is sound, it loses sight of the broad distinction between the lien of a mortgage and the lien of a judgment—the one being a special, while the other is a general lien; but, what is more important that the lien of a mortgage is derived from the act of the parties, while the lien of a judgment arises by operation of law; to say nothing of the effect of the recording law and the effect of express notice in determining the priority of the liens of the two mortgages. The argument drawn from the analogy of a voluntary deed set aside as to existing creditors for fraud, affords no support to the contention of respondent. In such case the Court proceeds upon the theory that the title to the property purporting to be conveyed never passed out of the judgment debtor, and in the eye of the law still continues to be the property of the judgment debtor, and is, therefore, liable to the satisfaction of the liens in the order of their legal priorities. In the very case cited to sustain respondent's contention—*Curlee v. Rembert,* 37 S. C.—it is said at page 222: "We think it is well settled, in this State at least, that the proceeds of a tract of land, title to which has been declared void as to creditors, is distributed in the Court of Equity among the creditors of the debtor, according to their legal rights and priorities. This rests largely upon the ground that *a fraudulent conveyance is no conveyance at all, but a mere nullity, the title remaining all the while in the debtor, and subject to all legal liens, as if the fraudulent deed never existed*" (italics ours); and on the same page, Mr. Justice McGowan quotes, with approval, the language of Chancellor

Dunkin, in *Gracey* v. *Davis,* 3 Strob. Eq., at page 58, where he used these words: "Where a deed is set aside as interfering with the rights of creditors, it is, as to those creditors, as if it had never existed," and goes on to show that this is the settled doctrine in this State as well as elsewhere. See, also, *Claflin* v. *Iseman,* 23 S. C., at page 427, to the same effect.    It is obvious, therefore, that the Court does not proceed upon the theory that the property embraced in a voluntary deed set aside as to creditors for fraud, is *after-acquired* property, but, on the contrary, treats it as still the property of the judgment debtor, and as such liable to the satisfaction of judgments in the order of their legal priorities.    It only remains to consider the argument of respondent's counsel, drawn from the provisions of the act of 1789, now incorporated in the Rev. Stat. of 1893, as sec. 2048, providing for the order in which assets coming to the hands of the executor or administrator shall be applied to the payment of the debts of the testator or intestate, by which judgments are placed in the third class—the language of the statute being: "3. Judgments, mortgages and executions—the oldest first."    But there is another provision in the same section in these words: "No preference shall be given among the creditors in equal degree, where there is a deficiency of assets, except according to legal priorities."    Now as the two judgments here under consideration both stand "in equal degree," both being judgments, if, as we have seen, neither has a prior lien; and if, as we have also seen, priority is derived from the date of the lien, and not from the date of entry of the judgment (sec. 744 of Rev. Stat., *supra*), then, even under the act of 1789, neither is entitled to be given the preference.    But even if we are in error in this respect, this is a special statutory provision applicable to a special state of circumstances, and cannot properly be applied to the present case in which the question arises under very different circumstances.    We are of opinion, therefero, that the Circuit Judge was in error in holding that the plaintiff's judgment should be first paid.

The judgment of this Court is, that the order of the Circuit Court, appealed from, be reversed, and that the case be remanded to that Court for an order requiring the sheriff to apply the money in his hands *pro rata* to the two judgments—one in favor of the plaintiffs and the other in favor of Fleishman, Morris & Co.