12320

McCONNELL *ET AL.* v. BARNES *ET AL.*

(140 S. E., 310)

1. EXECUTORS AND ADMINISTRATORS—ALL JUDGMENTS AGAINST DECEDENT HAVE PRIORITY OVER RENTS, BONDS, DEBTS BY SPECIALTY AND BY SIMPLE CONTRACT, AND ALL SHARE PRO RATA.—All judgments against decedent have priority, in application of general assets of estate upon which none have acquired specific lien, over rents, bonds, debts by specialty, and debts by simple contract, and all share *pro rata* in such fund, no preference being allowed.

2. EXECUTORS AND ADMINISTRATORS—DECREE NOT AUTHORIZING ISSUANCE OF EXECUTION DOES NOT RANK AS FINAL JUDGMENT IN ADMINISTRATION OF ESTATE.—A decree that does not authorize issuance of execution for its enforcement is not entitled to rank as final judgment in administration of estate, but judgment or decree must be final, and must not only ascertain that certain sum of money is due but must also order payment.

3. EXECUTORS AND ADMINISTRATORS—FORECLOSURE DECREE ASCERTAINING AMOUNT OF MORTGAGE DEBT AND DIRECTING SALE OF PROPERTY AND APPLICATION OF PROCEEDS TO DEBT DID NOT RANK AS JUDGMENT IN ADMINISTRATION OF DECEASED MORTGAGOR'S ESTATE (CIV. CODE 1922, § 5409; CODE CIV. PROC. 1922, § 430).—Decree of foreclosure

ascertaining amount of mortgage debt and directing sale of property and application of net proceeds of sale to mortgage debt was not such judgment as was contemplated in Civ. Code 1922, § 5409, relating to order of payment of debts out of assets in hands of administrator, in absence of specific adjudication that ascertained amount be paid by mortgagor or of judgment against mortgagor for amount of debt, under Code Civ. Proc. 1922, § 430, so that creditors in foreclosure action were not entitled to claim rank of judgment creditors in application of deceased mortgagor's assets to his debts.

Before HENRY, J., Chester, February, 1925. Reversed and remanded.

Action by Mary H. McConnell and another, individually and as administratrix of the estate of J. H. McConnell, deceased, against Mary M. Barnes and others. From the decree, defendants the Lathan Grocery Company and Jos. Wylie & Co. appeal.

*Messrs. J. M. Marion* and *Gaston, Hamilton & Gaston,* for Clark Furniture Co., and *R. B. Caldwell* for Lathan Grocery Co., cite: *A decretal order upon which an execution may be taken out as a final decree, must not only ascertain that a definite sum is due from one party to another, but order payment of same:* 13 S. C., 259; 40 S. C., 202; 106 S. C., 342; 1 Mc. Eq., 32; 13 S. C., 254; 115 S. C., 516. *Priority of judgments:* 18 Cyc., 559; 2 Hill Eq., 250; 45 S. C., 16; Sec. 5409, Code; 141 S. C., 290. *Creditor holding insurance policy on life of debtor entitled only to reimbursement for debt; must account for balance:* 25 Cyc., 900. *Decision of referee based on dictum in 56 S. C., 125, overruled by Circuit Court.*

*Messrs. Hemphill & Hemphill,* for certain appellants and certain respondents, cite: *Decrees of Courts rank as judgments and bind the property of the debtor, and must be paid as judgment debts by the executor:* 30 S. C. Eq., 203. *Same never reversed:* 13 S. C., 254; 23 S. E., 68. *By Stat. 1894 a Court may in one decree give judgment for the amount due, and also direct a sale of property mortgaged to secure*

*that debt:* 106 S. C., 342. *Judgment bears date of final decree:* 80 S. C., 289. *A policy of life insurance, valid in its inception, may be assigned to any one for a valuable consideration:* 87 A. S. R., 507; 51 S. C., 103. *Distribution of assets of debtor by executor or administrator: Sec.* 5409, Code. *Statute construed:* 141 S. C., 290; 56 S. C., 125. *Cases distinguished:* 11 S. C. Eq., 250.

*Mr. R. L. Douglas,* for three respondents, cites: *Judgments should be paid in the order of their priorities:* Sec. 5409, Code. *Rank of claims:* 3 Strob. Eq., 161; 19 S. C., 160; 23 S. C., 373; 32 S. C., 473; 24 S. C., 559. *Judgment dates from final decree of Court:* 80 S. C., 289; 77 S. C., 112; 21 S. C., 445. *Power of Court to render judgments:* Sec. 5232, Code. *A party is charged with notice of facts which he could have learned if he had pursued the information at hand:* 91 S. C., 487; 126 S. C., 180. *Final judgment:* 106 S. C., 342.

November 16, 1927.

The opinion of the Court was delivered by Mr. Justice Cothran.

Action to marshal the personal assets of the insolvent estate of J. H. McConnell, deceased, who died January 23, 1924, intestate, leaving no real estate, but leaving certain personal property which has been converted into cash by the personal representatives, and the proper application of which to his debts this action is to determine.

The claims against the estate are classified as follows: (1) Uncontested judgments. (2) Alleged deficiency judgments upon the foreclosure of certain mortgages. Their rank as judgments is contested. (3) Simple contract debts.

The assets of the estate are admittedly insufficient to satisfy the uncontested judgments. So the class of simple contract debts passes out of the discussion.

The controversy is twofold, as to the uncontested judgments and the alleged deficiency judgments:

(1) Whether the uncontested judgments are to be accorded priority in the application of the personal assets according to their respective dates.

(2) Do the deficiencies, upon foreclosure of the mortgages, rank as judgments or as simple contract debts?

The case was referred to J. C. McLure, Esq., as special referee, who submitted an exceedingly well-considered and clear report, holding:

(1) That the judgments were entitled to priority over the simple contract debts.

(2) That the alleged deficiency judgments were entitled to rank as judgments.

(3) That all of the judgments, the uncontested judgments and the alleged deficiency judgments, were of equal rank and should be paid *pro rata.*

Upon exceptions to this report, his Honor, Judge Henry, confirmed it in all respects except that he held that, under Section 5409, Vol. 3, Code of 1922, the judgments should be paid in the order of their dates, the oldest first, and so on.

From this decree one of the uncontested judgment creditors, Lathan Grocery Company, and three of the alleged deficiency judgment creditors, Wylie & Co., W. C. White and T. H. White, Jr., have appealed.

Lathan Grocery Company, an uncontested judgment creditor, takes the position that the fund in controversy should be applied *pro rata* to the uncontested judgments, excluding the alleged deficiency judgments.

The three alleged deficiency judgment creditors, above named, take the position that their judgments are valid judgments, and that the fund should be applied *pro rata* to all of the judgments, the uncontested judgments and the alleged deficiency judgments ranking equally.

I. Under the very recently decided case of *Weatherly v. Medlin* (S. C.), 139 S. E., 633; 141 S. C., 290, filed September 17, 1927, and the case of *Belnap v. Greene,* 56 S. C., 125; 34 S. E., 26, it is the settled law of this State, until they shall have been overruled, that all judgments against a decedent have priority, in the application of the general assets of the estate upon which none have acquired a specific lien, over "rents, bonds, debts by specialty, and debts by simple contract," and that there can be allowed no preference among them; all share *pro rata* in such fund.

Counsel for the Lathan Grocery Company misconceive the ruling in the *Weatherly v. Medlin* case, in the statement that that case "settled this issue, and decides the question in favor of the oldest judgment, and holds that the oldest judgment ranks first in the distribution of the general assets of the estate." There was only one judgment in that case at the time of the death of the debtor; there could therefore have been no adjudication between two or more judgments. The controversy was between a single judgment creditor and a single mortgagee, whose decree of foreclosure was entered after the death of the mortgagor; and it was held that the judgment had priority. It is plain that if there had been two or more judgments, none having a lien upon the general assets, the distribution would have been made *pro rata* among them without regard to dates.

His Honor the Circuit Judge was therefore in error in holding that the judgments were entitled to be paid in the order of their respective dates. The conclusion of the special referee upon this point was correct.

The other question remains to be considered whether the alleged deficiency judgments rank as judgments or as simple contract debts.

It appears that in 1921 T. H. White, who held two notes secured by mortgages, brought an action for foreclosure against J. H. McConnell. All lien creditors by judgment

and mortgage were made parties to that suit including the creditors who claim to be deficiency judgment creditors. All issues were referred to a referee, who, on February 11, 1922, filed his report finding the amounts due on the various liens, and recommending a sale of the mortgaged premises. On July 5, 1922, the Court entered a decree confirming the report and ordered a sale of the premises and disbursement of the proceeds. The decree made no provision for the clerk to report any deficiency, nor any mention to the entry of judgments for the deficiencies. It was entered in the abstract of judgments as a foreclosure decree with the amounts ascertained blank, before the death of McConnell. The lands were sold in November, 1922, and failed to bring enough to pay the plaintiff's mortgage debt.

The creditors who claim to be deficiency judgment creditors are as follows, the amounts stated being the amounts due at the date of the referee's report:

T. H. White, Jr., and M. S. Lewis..........$ 7,010.12
W. C. White, assigned by T. H. White...... 10,662.47
Foy & Shemwell ........................ 12,229.79
Jos. Wylie & Co........................ 2,912.69

In reference to these claims, the special referee found:

"It seems evident that the deficiency claims of Foy & Shemwell and M. S. Lewis and T. H. White, Jr. (joint), gained nothing by the entry of their judgments, since it appears that this was done after the death of J. Harris McConnell, and it is elementary that the rank of claims is fixed at death. Nor in my opinion were the judgment claims of W. C. White and Jos. Wylie & Co. aided by the judgments assigned or entered for them, as I am forced to the conclusion that *the decree* in *White v. McConnell et al.* created valid judgments in favor of these creditors against J. Harris McConnell, for the purposes of this action."

It does not appear that there were any exceptions filed by any of said deficiency creditors to this finding of the special referee.

In his decree his Honor Judge Henry held:

"I concur with the referee and hold that *the decree of the Court* in the case of *White v. McConnell et al.* created valid judgments against J. Harris McConnell and are entitled to rank as such as of July 5, 1922."

The decree confirms the report of the special referee in all respects except as to the matter of the application of the fund to the judgments according to their' dates.

The deficiency creditors filed no exceptions to the decree upon the matter above and submitted no additional sustaining grounds.

All of the testimony therefore relating to the attempted entries of deficiency judgments, after or before the foreclosure sale, passes out of the case. The sole question remaining is the correctness of the special referee's finding, confirmed by the decree that the decree of foreclosure constituted a judgment in favor of each of these creditors, regardless of such attempted entries.

Prior to the act of 1894 (21st Stat., 816, Code C. P. 1922, § 430, third paragraph on page 160), the mortgagee had no right, in a decree of foreclosure, to obtain a personal judgment against the mortgagor for the amount of the mortgage debt. *Hull v. Young,* 29 S. C., 64; 6 S. E., 938. He was obliged to wait until the sale had been had and a report of the deficiency made to the Court, upon which a judgment would be authorized.

At the common law, the foreclosure of a mortgage was considered a proceeding *in rem;* the mortgage was limited to the decree of sale and the application of the proceeds to the debt; thereafter he was obliged to proceed at law for the balance due upon the mortgage debt.

In the case of *Anderson v. Pilgram,* 30 S. C., 499; 9 S. E., 587; 4 L. R. A. 205; 14 Am. St. Rep., 917, it is

said that after the passage of the act of 1791, which declared that the fee to mortgaged property should continue in the mortgagor (the mortgagee having only a lien thereon), the change of the law created also a change in the practice,. and that it became proper to include in a decree of foreclosure a direction to report the deficiency, after applying the proceeds of sale to the mortgage debt, and then allow the mortgagee a judgment for the deficiency.

Later, the act of 1894 was passed, allowing the mortgagee, in the action of foreclosure, to include in the decree a personal judgment against the mortgagor for the amount of the mortgage debt; that judgment to be entered up, constituting a lien upon all other real estate, and later to be credited with the net proceeds of the foreclosure sale.

In the case at bar the mortgagees did not avail themselves of the privilege allowed by the act of 1894 (Code, § 430) of taking personal judgments against the mortgagor along with the decree of foreclosure. They made certain attempts before and after the sale, to enter up judgments for the deficiencies, which the special referee held added nothing to the judgments embraced in the decree; from which finding there is no exception.

The real question therefore is the correctness of the special referee's finding, confirmed by his Honor the Circuit Judge, that "the decree in *White v. McConnell et al. created valid judgments* in favor of all these creditors against J. Harris McConnell, *for the purpose of this action.*" In other words, abstractly stated, *is a decree of foreclosure,* which ascertains the amount of the mortgage debt and directs a sale of the property and the application of the net proceeds of sael to the mortgage debt, *such a judgment as is contemplated in Section 5409, Vol. 3, Code of 1922,* in the absence of a specific adjudication that the ascertained amount be paid by the mortgagor, or of a judgment against the mortgagor for the amount of the debt, under the act of 1894?

In *Haskell v. Rauol,* 1 McC. Eq., 22, it was said:

"A decretal order upon which an execution may be taken out is a final decree. * * * To give it such a character, it must be a final decree, and by that we understand, such a decree as not only ascertains that a definite sum is due from one party to another, but orders the payment of the same."

In *Ex parte Farrars,* 13 S. C., 254, the Court said:

"Since the case of *Woddrop v. Ward,* 3 Desaus., 203, it has not been doubted that in this State decrees in equity rank as judgments in the administration of assets * * * of deceased persons. * * * It was not, however, every decree which was entitled to that rank, for, as is said in the next page of Williams on Executors: 'If a decree be not conclusive of the matters in question, as if it be merely to account and do not ascertain the sum to be paid, it is analogous to a judgment *quod computet* at law, and that is no complete judgment till the account be stated.' * * * Such a decree is like an interlocutory judgment at law, which has been held, in the case of *McIntosh v. Wright,* Rich. Eq., 385, not to be such a judgment as is contemplated by the Act of 1789. * * * *To give it such a character, it must be a final decree, and by that we understand (speaking of a money decree) such a decree as not only ascertains that a definite sum of money is due from one party to another, but orders the payment of the same. It must be such a decree as will authorize the issuing of an execution for its enforcement.* As is said in *Haskell v. Raoul,* 1 McC. Eq., 22, a decretal order upon which an execution may be taken out is a final decree."

The case of *Cook v. Jennings,* 40 S. C., 205; 18 S. E., 640, was a case similar to the case at bar. It was a controversy between the creditors of one N. C. Roberston, who died leaving a small amount of personal assets, which came into the hands of his executor, the defendant Jennings. His widow, Julia W. Robertson, as the assignee of what purported to be a judgment against the deceased at the time

of his death, claimed that the assets should be applied to that judgment, as a preferred claim under what is now Section 5409, Code of 1922. The history of the alleged judgment is this: A suit for foreclosure was instituted against Robertson; the referee reported a certain amount due by Robertson to the plaintiffs upon the notes secured by the mortgages; the report was confirmed by order of the Circuit Court which contained the following:

"It was further ordered and adjudged, that the mortgaged premises described in the complaint, etc., be sold. * * * That if the proceeds of the sale be sufficient to pay the amount so reported due * * * the said clerk * * * specify the amount of such deficiency in his report of sale, and that the defendant pay the same; * * * and that the said Henry L. Elliott and the said plaintiffs have execution thereof (therefor?)."

The premises were sold and a deficiency reported by the clerk.

From the Circuit decree in favor of the allowance of Mrs. Robertson's claim to preference as a judgment creditor, other creditors appealed upon the following grounds, among others:

"(4) Because his Honor erred in holding that the demand of Mrs. Julia Robertson was a judgment at the death of the testator, N. C. Robertson, and superior in rank to the claim of the plaintiffs.

"(5) Because his Honor should have held that the claim of Mrs. Julia Robertson was not at the time of testator's death a judgment in contemplation of the act of the General Assembly providing for the order of payment of the debts of decedent's estates."

The opinion of the Court was written by Mr. Justice Pope, later Chief Justice, who with great elaboration maintained that the decree of foreclosure was a final judgment, within the meaning of the act, and that Mrs. Robertson was entitled to preference over simple contract creditors.

The Chief Justice (McIver) and Mr. Associate Justice McGowan, however, declined to concur in the conclusion of Mr. Justice Pope. The result, announced by Mr. Justice Pope, was that exceptions 4 and 5, above set forth, *were sustained,* and preference disallowed, upon the ground that the decree was not such a judgment as was contemplated in the act. It would be impossible to find a more direct parallel.

"A decree that *does not authorize the issuing of an execution* for its enforcement is not entitled to rank as a final judgment in the administration of the estate." 5 A. & E. Enc. L. (1st Ed.), 240.

"The judgment or decree must be final, and must not only ascertain that a certain sum of money is due *but also order payment.*" 24 C. J., 432.

In 2 Jones Mtg. (6th Ed.), § 1587, the following is quoted from the case of *Nutt v. Cuming,* 155 N. Y., 309; 49 N. E., 880:

"A judgment entered in a foreclosure action is final for all purposes of review, *but in other respects it is interlocutory.* All of the proceedings for the sale, including the advertising of the notice and the confirmation of the sale, take place thereafter."

In *Forgay v. Conrad,* 6 How., 201; 12 L. Ed., 404, the Court said:

"When the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant; *or directs it to be sold, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution,* the decree must be regarded as a final one to that extent," etc.

This case is cited with approval in the *Farrars case* and the above quotation, with the italics, appears in the opinion. The Court adds:

"No definite sum was ascertained to be due by Dial to the plaintiff, *and certainly there was no order for the payment to them of such sum.* \* \* \* We do not see, therefore, how, without some further action on the part of the Court, *any execution could have been issued to enforce the decree;* \* \* \* and to do this it would have been necessary to show some decree of the Court, not only ascertaining that a definite sum of money was due by one party to the other, *but also an order for the payment of the same.* \* \* \* There still is an entire absence of any order or decree for the payment of such amount, and *without such order there is no such judgment as would authorize the issuing of an execution to enforce the payment."* (Italics added.)

In *Ridgley v. Abbott Quicksilver Min. Co., 79 P., 883.*[1] the Court said:

"The judgment appealed from ordered a sale of the premises mortgaged, and that the proceeds be applied to the payment of the amounts found to be due from appellant to the plaintiff. There was no personal judgment against appellant, nor was there any order that a judgment be entered for any deficiency left after application of the proceeds of the sale to the debt. To be sure, it was found that a certain sum was due and unpaid from appellant to plaintiff; but this was only a finding, and no part of the subsequent decree or judgment, 'and cannot be regarded as an adjudication of personal liability.' Without this 'adjudication of personal liability' the clerk had no authority to docket a deficiency judgment"; or we may add a judgment for the amount of the debt; and of course, no authority to issue an execution.

In *Blumle v. Kramer,* 14 Okl., 366; 79 P., 215, the syllabus states:

"In an action in the State of Nebraska to foreclose a real estate mortgage the finding of the Court of the amount

---

[1] Reported in full in the *Pacific Reporter;* not reported in full in 146 Cal., 18.

due under the mortgage is not a judgment *in personam* against the defendants, and is not final, but is sufficient as the basis upon which to obtain a deficiency judgment."

"Under C. S., § 6949, decree of foreclosure * * * is not personal judgment." *Perkins v. Bundy,* 42 Idaho, 560; 247 P., 751.

The case of *Barron v. Southern Co.,* 106 S. C., 342; 91 S. E., 321, throws no light upon the question. In that case the question was whether the foreclosure decree so conformed to the Act of 1894 as to allow the plaintiff, in advance of the sale, to enter a personal judgment for the amount of the mortgage debt. The court held that as the decree adjudicated that on a certain day the defendant was due to the plaintiff a sum certain, and was ordered to pay it on a day certain, it possessed all the requirements of a judgment, and was entitled to be entered in the abstract of judgments. It is apparently cited by counsel for certain of the so-called deficiency judgment creditors, to support their contention that the foreclosure decree constituted personal judgments in their favor. The distinction between the two cases is obvious: in the *Barron case* there was *a specific direction that the mortgagor pay a definite sum at a certain time;* there is no such provision in the *White v. McConnell* decree.

If a decree of foreclosure can be considered a judgment under Section 5409, before the sale has been had and the deficiency ascertained, and an immediate distribution of the general assets of the insolvent is required, upon the basis of what amount shall the judgment creditor be apportioned his *pro rata?* It manifestly would not be just to the other judgment creditors to allow him to enter the full amount ascertained to be due upon the mortgage debt upon which his *pro rata* was to be determined.

As the so-called deficiency judgment creditors are not allowed by this judgment to claim the rank of judgment creditors and are excluded from participation in the fund,

which is not sufficient to satisfy the uncontested judgments, it follows that the question of the application of the proceeds of certain life insurance, collected by certain of them, is without practical interest.

The judgment of this Court is that the decree of the Circuit Court be reversed and that the case be remanded to that Court for such further proceedings as may not be inconsistent with the conclusions herein announced.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur.

